STATE of Wisconsin, Plaintiff-Respondent,†

v.

Muhammad SARFRAZ, Defendant-Appellant.

Court of Appeals

*No. 2012AP337–CR. Submitted on briefs January 4, 2013.
—Decided April 9, 2013.*

**2013 WI App 57**

(Also reported in 832 N.W.2d 346.)

† Petition for Review granted 9-17-13.

57

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Raymond M. Dall'Osto* and *Jason D. Luczak* of *Gimbel, Reilly, Guerin & Brown, LLP* of Milwaukee.

On behalf of the plaintiff-respondent,the cause was submitted on the brief of *J.B. Van Hollen*, attorney general and *Daniel J. O'Brien*, assistant attorney general.

Before Curley, P.J., Kessler and Brennan, JJ.

¶ 1. KESSLER, J. Muhammad Sarfraz appeals from the judgment of conviction, following a jury trial, of second-degree sexual assault by use of force. Sarfraz also appeals from the order denying his postconviction motion for a new trial. Because we conclude that the trial court erroneously barred evidence pursuant to Wis. Stat. § 972.11 (2009–10),[1] we reverse the trial court and remand for a new trial.

## BACKGROUND

¶ 2. On May 20, 2010, Sarfraz was charged with the second-degree sexual assault of I.N. with force or violence, by use of a dangerous weapon. After immigrating to the United States from Pakistan, I.N. and her father temporarily resided with Sarfraz and his family, who are also from Pakistan. The complaint alleges that police were called to I.N.'s apartment on the afternoon of May 15, 2010.[2] I.N. alleged that, earlier that morning, she heard a knock at her apartment door. Prior to

[1] All subsequent references to the Wisconsin Statutes are to the 2011–12 version unless otherwise noted.

[2] The complaint actually alleges that police were called to I.N.'s apartment on May 16, 2010; however, the record indicates that the alleged assault occurred on May 15, 2010. We therefore

opening to the door, she asked who was there. I.N. told police that the person responded "Jim," the name of I.N.'s landlord. I.N. opened the door. The complaint contends that after I.N. opened the door, a man with a black mask entered the apartment, grabbed I.N.'s neck and said, "I'm going to kill you." With both of the masked man's hands on her neck, I.N. was able was to remove the mask and immediately recognized Sarfraz.

¶ 3. The complaint further alleges, based on I.N.'s statements, that I.N. and Sarfraz struggled as Sarfraz pushed I.N. into her apartment bathroom, causing the toilet seat and a window to break. I.N. then noticed that Sarfraz had a flip knife in his hand. A struggle for the knife ensued, leading to cuts both on Sarfraz's face and I.N.'s finger. Sarfraz and I.N. made their way into I.N.'s living room, where Sarfraz showed I.N. a pornographic movie, and then fondled and kissed I.N., and eventually had forced intercourse with her.

¶ 4. Sarfraz was arrested and charged when police stopped the taxi Sarfraz was driving. The arresting officers reported a laceration on the right side of Sarfraz's face and the recovery of a bloody knife from the taxi. No mask was recovered either from I.N.'s apartment or Sarfraz's taxi.

¶ 5. Throughout the course of his trial, Sarfraz maintained his innocence, putting forth a very different version of events as his defense. After pleading not guilty, but prior to the commencement of his jury trial, Sarfraz filed a motion to admit evidence of prior consensual sexual activity between I.N. and himself to support his defense that the sexual activity on May 15, 2010, was consensual and that the two had a romantic relationship prior to the date of the alleged assault.

refer to the alleged assault, including with regard to the complaint, as having occurred on May 15, 2010.

Sarfraz argued that evidence of I.N.'s prior sexual conduct with him was an exception to Wisconsin's rape shield law, pursuant to WIS. STAT. § 972.11(2)(b)1.[3]

## The Evidentiary Hearing

¶ 6. The trial court held a pretrial evidentiary hearing on Sarfraz's motion. Sarfraz, I.N., Riffat Sarfraz (Sarfraz's wife), and Azmat Uddin (Sarfraz's friend) all testified at the hearing. It was undisputed that I.N. and her father emigrated from Pakistan and resided with Sarfraz and his family from January 2010 to April 2010. The nature of the relationship between I.N. and Sarfraz and the details of the events leading up to the alleged assault, however, were in dispute.

¶ 7. Sarfraz testified that shortly after I.N. and her father moved into Sarfraz's apartment, he and I.N. began a romantic relationship. Sarfraz told the trial court that he and I.N. started their relationship as friends, but eventually confessed their feelings for one another and began a physical relationship. Because of the various work and school schedules of those residing

---

[3] WISCONSIN STAT. § 972.11(2)(b) provides as relevant:

If the defendant is accused of a crime under s. 940.225, 948.02, 948.025, 948.05, 948.051, 948.06, 948.07, 948.08, 948.085, 948.09, or 948.095, or under s. 940.302(2), if the court finds that the crime was sexually motivated, as defined in s. 980.01(5), any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct *with the defendant.*

(Emphasis added.)

61

in Sarfraz's household, including Sarfraz's wife and I.N.'s father, Sarfraz stated that he and I.N. had considerable time alone together. During this time, the two would frequently hug, kiss, and lay in bed together. Sarfraz stated that for cultural reasons he and I.N. agreed not to have sexual intercourse, but would often times engage in "fondling and touching and all that stuff." Specifically, Sarfraz stated that he would frequently "grab" I.N.'s breasts and she would "grab" his penis. Sarfraz testified that there were many occasions when I.N. would grab his penis and he would ejaculate.

¶ 8.　Sarfraz further told the trial court that some of his conduct with I.N. was known to his wife, prompting Riffat to demand that I.N. and her father move out. Sarfraz then helped them find an apartment. Sarfraz stated that he and I.N. continued to maintain a romantic relationship after I.N. moved. The relationship involved frequent visits to I.N.'s apartment and continued fondling, kissing and I.N.'s touching of Sarfraz's penis. Sarfraz stated that because sexual intercourse prior to marriage is disallowed in his culture, he and I.N. discussed the possibility of getting married. Sarfraz also stated that on the day of the alleged assault, I.N. initiated multiple sexual activities with him, including "put[ting] her breast in my mouth," "rubbing her vagina on my . . . penis," and "touch[ing] my penis with her hands."

¶ 9.　Sarfraz's wife, Riffat, testified that she twice found Sarfraz and I.N. in compromising positions. Riffat stated that she was generally not home in the mornings because she attended English classes, but came home early on one occasion and found Sarfraz and I.N. "putting food into each other's mouth[s] very lovingly." Riffat stated that on another occasion she returned home early and found Sarfraz and I.N. lying in

bed together; neither was wearing pants. Riffat stated that she then began pressuring her husband to force I.N. to move out.

¶ 10. Uddin, a fellow taxi driver and friend of Sarfraz, stated that one time he walked into Sarfraz's apartment and saw I.N. sitting on top of Sarfraz while Sarfraz was lying down. Uddin stated that I.N.'s hands were on Sarfarz's stomach, while Sarfraz's arms were around I.N.'s waist. Uddin said that I.N. ran out of the room when she realized what Uddin saw. Uddin testified that on another occasion he saw I.N. hugging Sarfraz from behind while Sarfraz was cooking.

¶ 11. I.N. testified that she never had a romantic relationship with Sarfraz, never discussed marriage with Sarfraz, and never engaged in any sexual or physical activity with Sarfraz. She stated that she and her father moved out of Sarfraz's apartment because her father found a job, not because of Riffat's demand. I.N. also stated that before the alleged assault, the only time Sarfraz came to her apartment was to help her move.

¶ 12. The trial court ruled that Sarfraz could not offer evidence of his prior sexual relationship with I.N. The trial court stated:

> Without a rape shield law, this would be relevant evidence, and we wouldn't even be having this discussion.
>
> The legislature, in their wisdom, has said that [a] woman's past sexual history is not relevant, not material, when she accuses somebody of raping her.
>
> There is an exception if a – there is evidence of the complaining witness's past conduct with the defendant.
>
> But in order for me to invoke that exception, I have to find three things.

One, and the defendant must show me these three things, that the proffered evidence relates to sexual activities between the complainant and the defendant.

I've already ruled that a reasonable jury could believe that there was a sexual relationship between the two of 'em.

However, when we start talking about materiality, what the defendant is accused of here is a rape, a forcible rape.

None of the sexual contact between the defendant and the victim involved that.

Even if I accept it at its face value that it's true, what it involved at was sexual contact, a masturbating of the defendant to ejaculation by the victim's hand.

We have that and more in this case. In this case, what we have is actual, physical, penis-to-vagina intercourse, forcibly, on the defendant, on the victim.

If the forcible factor wasn't there, you might have an argument that it progressed from a – a hand-to penis sexual contact to penis-to-vagina sexual contact. But we've got more than that here.

It's not material to what happened here, and that is, did he force himself.

We've got three elements that the State has to prove, here. They have to prove the sexual contact, they have to prove that it was without consent, and they have to prove that it was forcibly done.

And when I look at that, the prior sexual relationship between these parties is not material to all three of those elements.

It might be material to one of 'em, but there's no question that they had it in the past, and they had it here.

64

. . . .

And their prior sexual relationship may have some bearing on consent, although I doubt it, but it's certainly, when you look at the consent issue – in conjunction with the force issue, it doesn't.

So I don't even get to the third prong. But if I got to the third prong, you know, . . . I consider whether or not a – the prejudicial nature outweighs the probative value.

Here, I do it the other way, so it's assumed that the probative value outweighs the inflammatory and prejudicial nature.

But is it a sufficient? I don't think so, not when you start talking about the forcible situation, here.

So at the trial, the defense will be allowed to talk about the relationship that it alleges between the defendant and the victim.

However, it cannot go into anything of a sexual contact nature.

**The Trial**

¶ 13. I.N., Sarfraz, Riffat and Uddin all also testified at trial.[4] Because Riffat and Uddin both testified the same as they did at the evidentiary hearing, we do not repeat their trial testimony.

¶ 14. Consistent with the facts alleged in the complaint, I.N. told the jury: On the morning of May 15, 2010, a man claiming to be "Jim"—the name of I.N.'s landlord—knocked on her door. Upon opening the door, a masked man grabbed I.N. and pushed her into her apartment bathroom. I.N. said that the masked man was strangling her, stating he "was squeezing me hard on my

---

[4] Both I.N. and Sarfraz testified with the assistance of Urdu-language interpreters.

neck and I was struggling with him and in the meantime he put his knife on my neck too." During the struggle, I.N. was able to remove her attacker's mask, who she recognized as Sarfraz. Sarfraz then "kept his knife on one side of the floor," and while " still struggling to get free," I.N. "pulled the knife with one . . . foot and . . . lifted it and . . . tried to hit him with that knife to free [herself]." I.N. struck Sarfraz's cheek, but cut herself as well. Sarfraz then relocated I.N. to her living room, where he "threw [I.N.] on the floor" and removed her pants. According to I.N., Sarfraz was able to retrieve possession of the knife and was "constantly threatening" her with it. I.N. attempted to get outside attention by "somehow reach[ing] the window," and attempted to make it to her front door, but Sarfraz was still able to put a pornographic DVD into her DVD player, remove his pants, and force penis to vagina intercourse. I.N. stated that after Sarfraz left, her "neighbor saw [Sarfraz] leaving and I was in real bad shape and I was shouting and screaming for help." Her neighbor then called the police. I.N. denied ever having a romantic, physical and/or sexual relationship with Sarfraz, stating she "always thought of him as [her] brother." She denied wanting to marry Sarfraz and having frequent visits with him, stating that after she moved into her own apartment she went back to his apartment to visit "two times."

¶ 15. Sarfraz told the jury that he and I.N. had a romantic relationship (but because of the trial court's earlier ruling he could not describe any sexual contact between I.N. and himself). Sarfraz said that he and I.N. spent a considerable amount of time alone together and he would often take I.N. shopping and sight-seeing in the city, but would tell his wife that he was taking I.N. job-hunting. Sarfraz and I.N. would hug and kiss while out alone together. Sarfraz stated that after I.N. moved

into her own apartment, the two would still frequently visit each other at their own respective apartments. Sarfraz said that he taught I.N. the bus route to his home and I.N. would visit when his wife was not home. When Sarfraz and I.N. were together, the two would frequently discuss the possibility of getting married. Sarfraz said that on the morning of May 15, 2010, he stopped by I.N.'s apartment on his way home from a taxi route. Sarfraz stated that he did not attempt to conceal his identity, but rather knocked on the door and responded "me" when I.N. asked who was there. Recognizing Sarfraz's voice, I.N. opened the door. Sarfraz and I.N. sat down together and I.N. "started talking about need[ing] . . . money for herself and her family back in Pakistan." I.N. then "started talking about our marriage . . . insisting that I should leave my wife and my kids." After telling I.N. that it was "impossible" to leave his children, "things got heated." Sarfraz "stood up" and I.N. "grabbed me from my coat . . . and then she was saying that, 'you keep promising,' and you know, 'what['s] going on' and all this kind of stuff." (Some formatting altered.) I.N. was "crying and yelling . . . and she was . . . hitting me with [her] fist." Sarfraz then pushed I.N. out of the way because he had to use the bathroom. He was sitting on the toilet when I.N entered the bathroom and cut Sarfraz's cheek with a knife. A struggle over the knife ensued and I.N. cut her finger. Sarfraz put his hand on I.N.'s throat and pushed her away from him, causing I.N. to fall into the bathtub. Sarfraz was then able to grab the knife and put it in his back pocket. When he was finally able to leave the bathroom, he went into the living room and fell from pain related either to kidney stones or gallstones. Sarfraz told I.N. that he thought she wanted to kill him and said "if I call the police, do you know . . . what can

67

happen to you? You just have a – a new[] green card only. Your status is just resident status." Sarfraz said that I.N. began "crying" and "apologizing" and began to comfort Sarfraz. I.N. "start[ed] this kind of love talk, and she came and sat on top of me." I.N. then cleaned the blood from Sarfraz's face, laid on top of him and said, "I love you very much and I want to do the sex with you." Sarfraz said that because he had come from the bathroom, his pants were already down, however I.N. removed his underwear and her pants. Sarfraz "told her that whatever you want to do, go ahead." I.N. then initiated a series of sexual activities that led to sexual intercourse. Sarfraz left I.N.'s apartment shortly after because he noticed several missed calls from his wife.

¶ 16. Sarfraz was convicted as charged by the jury. He was sentenced to ten years of incarceration and five years of extended supervision. Sarfraz filed a motion for postconviction relief alleging ineffective assistance of counsel and entitlement to a new sentence. The trial court denied the motion in a written decision. On appeal, Sarfraz argues that the trial court erroneously barred evidence of I.N.'s prior sexual conduct with Sarfraz. Because we agree that evidence of I.N.'s prior sexual conduct with Sarfraz was admissible pursuant to Wis. Stat. § 972.11(2)(b)1., we do not address Sarfraz's other arguments. *See Patrick Fur Farm, Inc. v. United Vaccines, Inc.*, 2005 WI App 190, ¶ 8 n.1, 286 Wis. 2d 774, 703 N.W.2d 707 (We decide cases on the narrowest possible grounds.).

## DISCUSSION

### Standard of Review

¶ 17. Wisconsin Stat. § 972.11, known as Wisconsin's rape shield law, generally prohibits evi-

dence of the complainant's prior sexual conduct. *State v. Ringer*, 2010 WI 69, ¶ 25, 326 Wis. 2d 351, 785 N.W.2d 448. "The rape shield law was enacted to counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations." *Id.* (internal quotation marks and citations omitted). The statute "expresses the legislature's determination that evidence of a complainant's prior sexual conduct has low probative value and a highly prejudicial effect." *State v. DeSantis*, 155 Wis. 2d 774, 784–85, 456 N.W.2d 600 (1990).

¶ 18. However, WIS. STAT. § 972.11(2)(b) provides three statutory exceptions to the exclusions. As relevant to this case, WIS. STAT. § 972.11(2)(b)1. provides:

> If the defendant is accused of a crime under s. 940.225, 948.02, 948.025, 948.05, 948.051, 948.06, 948.07, 948.08, 948.085, 948.09, or 948.095, or under s. 940.302(2), if the court finds that the crime was sexually motivated, as defined in s. 980.01(5), any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):
>
> 1. Evidence of the complaining witness's past conduct with the defendant.

This exception allows those limited factual scenarios in which the legislature has determined that evidence of a complainant's sexual history may be sufficiently probative of a material issue to overcome the prejudicial nature of such evidence. *See State v. Pulizzano*, 155 Wis. 2d 633, 644, 456 N.W.2d 325 (1990).

¶ 19. This exception is subject to WIS. STAT. § 971.31(11), which states in pertinent part: "evidence which is admissible under s. 972.11(2) must be determined by the court upon pretrial motion to be material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial."

¶ 20. The admission of evidence of past sexual conduct between the defendant and the complainant is therefore governed by a three-step test: (1) the proffered evidence must relate to sexual activities between the victim and the defendant; (2) the evidence must be material to a fact at issue; and (3) the evidence of sexual contact with the victim must have sufficient probative value to outweigh its inflammatory and prejudicial nature. *See DeSantis*, 155 Wis. 2d at 785; *State v. Jackson*, 216 Wis. 2d 646, 658–59, 575 N.W.2d 475 (1998). We consider the second and third prongs only if the first is met. *See Ringer*, 326 Wis. 2d 351, ¶ 28.

¶ 21. Although the admission of evidence is left to the discretion of the trial court, we will find an erroneous exercise of that discretion if the trial court has improperly applied the facts of record to the accepted legal standards. *See State v. Dunlap*, 2002 WI 19, ¶ 31, 250 Wis. 2d 466, 640 N.W.2d 112. Keeping these standards in mind, we turn to an analysis of the trial court's discretionary decision.

### The *DeSantis* Test

¶ 22. In *DeSantis*, our supreme court applied the three-part admissibility test to WIS. STAT. § 972.11(2)(b)3. *DeSantis*, 155 Wis. 2d at 785. In *Jackson*, our supreme

court made the three-part *DeSantis* test applicable to Wis. Stat. § 972.11(2)(b)1. *See Jackson*, 216 Wis. 2d at 658–59. We therefore apply the *DeSantis* test to the facts of Sarfraz's case.

## A. The First Prong

¶ 23. *DeSantis* first requires that the "[trial] court . . . be able to conclude from the defendant's proffer that a reasonable person could reasonably infer that the prior sexual conduct occurred." *Jackson*, 216 Wis. 2d at 659. In this case, the trial court correctly concluded, based on the testimony of Sarfraz, Riffat and Uddin, that a reasonable person could conclude that prior sexual conduct occurred between Sarfraz and I.N. However, the trial court went on to conclude that because force was not present in the prior sexual contact, the evidence was not relevant to the question of whether Sarfraz had forcible penis to vagina intercourse with I.N. The trial court did not address the third prong.

## B. The Second Prong

¶ 24. The second prong of the *DeSantis* test requires us to determine whether the evidence of the prior consensual sexual conduct is relevant to a material fact in the case. *See Jackson*, 216 Wis. 2d at 660. Because the heart of Sarfaz's defense was that I.N. consented to sexual intercourse, we conclude that evidence of prior consensual sexual conduct between Sarfraz and I.N. is relevant to a material fact in this case. *See* 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 420.4 at 285 (3d ed. 2011) (Evidence of prior consensual contact is often used to show

71

that the complaining witness consented at the time of the alleged assault.). At the evidentiary hearing, Sarfraz's counsel argued that the evidence was relevant to Sarfraz's defense to the claim of forced contact:[5]

> The whole nature of that relationship existed is material to the idea that he would in some way need to come to that apartment with a mask and a knife to try to get sex from her, which – is what the nature of these allegations are.
>
> And it also goes, I think, a – to whether there was consensual sex along the lines that Mr. Sarfraz would testify to, that after she attacked him, she – she enticed him into a – sexual activity along the lines of what he's described in his testimony today, in order to placate him.
>
> That type of consent, I think, is relevant to this type of scenario. It may not be in the traditional type of situation, but I think it is relevant here. It explains the sex.
>
> It also, I think, a – is central to attacking the idea a – that there was forcible entry with a mask and knife.
>
> All of these things are central to the defense. I think we need to be able to put that into evidence in order to present a defense for a – Mr. Sarfraz.

---

[5] The Dissent mischaracterizes the nature of Sarfraz's defense, particularly when it says "Sarfraz argues that sexual contact was consensual before, so it must have been consensual this time, too." Dissent, ¶ 35. In fact, the extremely intimate nature of the entire prior relationship is material not only to whether I.N. consented to, or initiated, the contact here, but also to whether there was any reason for, and whether Sarfraz in fact did, wear a mask, give a false name, or force I.N. to do anything as an unwilling participant. The totality of the extremely intimate relationship is directly material to whether I.N. is a credible and truthful witness in this case. The jury was thus entitled to hear the entire context of the relationship between I.N. and Sarfraz.

¶ 25. The trial court found that because the prior sexual contact did not involve force, the prior contact was "not material to what happened here." The trial court did, however, also acknowledge that prior consensual sexual contact was relevant to whether there was consent in this instance, but nonetheless rejected Sarfraz's motion, stating "their prior sexual relationship may have some bearing on consent, although I doubt it." By acknowledging the possibility that the evidence was relevant to Sarfraz's defense, but then "doubt[ing] it," the trial court weighed the evidence on its own, rather than allowing the jury to make a relevance determination. Such is not the role of the trial court. A jury could still have a reasonable doubt as to Sarfraz's guilt after hearing evidence of prior consensual sexual conduct, despite the trial court's "doubt[s]." *See State v. Edmunds*, 2008 WI App 33, ¶ 18, 308 Wis. 2d 374, 746 N.W.2d 590. Indeed, one juror even submitted a question to the trial court asking whether any sexual contact between Sarfraz and I.N., "other than hugging or kissing[,]" occurred prior to the date of the alleged assault. The pretrial ruling kept the jury from learning the scope and extent of the prior relationship, and appears to have created the impression that the relationship involved only the most modest form of intimacy.

¶ 26. The trial court essentially held that for evidence of the past sexual conduct between Sarfraz and I.N. to be admissible, it must be of the same type and nature that is charged as a crime. Neither the language of Wis. Stat. § 972.11(2)(b), nor relevant case law, require that the prior sexual conduct between the accuser and the accused be the same as that alleged in a criminal case. In *Jackson*, our supreme court upheld the trial court's bar of prior sexual conduct evidence not

because the defendant failed to show similarities between previous sexual conduct and forcible conduct, but because the defendant's offer of proof was too vague to support his theory that the complainant acted out of anger and jealousy. *Id.*, 216 Wis. 2d at 662 ("Had the defendant proffered sufficient facts to support his undeveloped anger or jealousy theory, the [trial] court could have found the prior sexual relationship to be material for purposes of [Wis. Stat.] § 971.31(11)."). Here, Sarfraz presented detailed evidence of the prior consensual relationship, including some corroboration by other witnesses.

¶ 27. Sarfraz established that evidence of prior sexual conduct was material to a fact at issue. That I.N. may have masturbated Sarfraz on numerous occasions, both at Sarfraz's apartment and at her own, is relevant to the issue of whether I.N. consented to sexual contact on May 15, 2010. The full scope of their sexual relationship is relevant to whether it is believable that Sarfraz attempted to conceal his identity from someone who knew him so well in a physical sense. No mask was recovered from either I.N.'s apartment, Sarfraz's taxi, or any other location searched by police. If the jury believed that Sarfraz was a frequent visitor and engaged in explicit sexual conduct with I.N. at her apartment, then the jury could reasonably infer that Sarfraz did not pretend to be I.N.'s landlord, wear a mask, or force his way into her apartment. The jury could also reasonably infer that the testimony of Riffat and Uddin, both of whom stated that they caught Sarfraz and I.N. together in romantic situations, was credible. Therefore, explicit evidence of Sarfraz's and I.N.'s prior consensual contact is material to the question of whether the sexual contact alleged here was consensual.

74

¶ 28. We held in *Milenkovic v. State*, 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978), that an "offer of proof need not be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt." Accepting Sarfraz's allegations of the prior sexual relationship as true, the facts alleged could lead a reasonable trier of fact to conclude that I.N. allowed Sarfraz to enter her apartment knowing that it was him and consented to sexual contact, including sexual intercourse, on the day in question. The trial court's contrary conclusion as to materiality was based on an erroneous interpretation of the law.

## C. The Third Prong

¶ 29. The final prong of the *DeSantis* test requires the defendant to demonstrate "that the probative nature of the evidence outweighs any prejudice to the defendant." *Jackson*, 216 Wis. 2d at 663. Sarfraz argues evidence of prior sexual contact between himself and I.N., in essence, provides "the missing piece" of evidence that would allow the jury to question the credibility of I.N.'s denials and allegations. We agree.

¶ 30. At the evidentiary hearing, Sarfraz argued that: (1) it was implausible that he would have to trick his way into I.N.'s apartment by wearing a mask and claiming to be the landlord; (2) I.N. had a motive to attack him with a knife because he expressed hesitation about leaving his family to marry I.N.; and (3) I.N. enticed him into having sex with her as a means of apologizing for the knife attack. The probative value of prior sexual activity evidence—namely, evidence that

I.N. masturbated Sarfrazoutweighs any potential for prejudice to I.N. A jury that believed Sarfraz could reasonably infer from the context of the entire relationship that I.N. consented to elevated sexual contact (intercourse) to regain Sarfraz's favor after her attack. The evidence the trial court barred supports each aspect of Sarfraz's defense. If the jury heard all of Sarfraz's evidence of prior sexual contact between I.N. and himself, and believed the evidence, it could have reasonably concluded that: (1) Sarfraz did not conceal his identity and force his way into I.N.'s apartment; (2) Sarfraz and I.N. had indeed discussed marriage; and (3) I.N. consented to, or perhaps even initiated, sexual intercourse with Sarfraz. Under this set of facts, we conclude that evidence of prior sexual conduct was far more probative of the defense theories than prejudicial to I.N.

## CONCLUSION

█

¶ 31. We conclude that evidence of prior sexual conduct between Sarfraz and I.N. was admissible at trial as an exception to Wisconsin's rape shield law. Because the trial court erroneously barred Sarfraz from presenting this evidence, and therefore precluded him from providing a complete defense, we reverse the trial court and remand this matter for a new trial.

*By the Court.*—Judgment and order reversed and remanded with instructions.

¶ 32. BRENNAN, J. (*dissenting*). I dissent for three reasons.

¶33. First, this is a review of a discretionary decision by the trial court to exclude evidence. We should not reverse unless the trial court used the wrong

legal standard, even if we would have exercised our discretion otherwise. *See Johnson v. Johnson*, 225 Wis. 2d 513, 516, 593 N.W.2d 827 (Ct. App. 1999). Here, the trial court applied facts from the record to the correct legal standard from *DeSantis*. We should uphold the trial court's decision.

¶ 34. Second, the excluded evidence was not material. It is important to note at the outset *what exactly* the excluded evidence consisted of. It was limited to Sarfraz's testimony that he and the complainant previously engaged in consensual masturbation.[1] None of Sarfraz's other evidence of a prior romantic relationship was excluded. For example, the trial court allowed Sarfraz to testify about all of the details of his and the complainant's long prior romance including hugging, kissing and lying in bed together. *See* Majority, ¶ 7. The trial court permitted Sarfraz's wife to repeat her testimony of observing Sarfraz "lovingly" feeding the complainant food and observing them together without pants. *See* Majority, ¶ 9. The trial court permitted Sarfraz's friend to testify about observing the complainant embracing Sarfraz from behind. *See* Majority, ¶ 10. Thus, the jury did hear many details about Sarfraz's version of their prior sexual relationship. The only thing the trial court excluded was Sarfraz's claim of prior consensual masturbation.

¶ 35. The materiality analysis then is limited to whether the consensual masturbation evidence was material to a fact at issue in the case. *See* Wis. Stat. § 971.31(11); *DeSantis*, 155 Wis. 2d at 785. Sarfraz argues that the evidence is material because it shows that he is telling the truth and that the complainant is

---

[1] The Majority notes that the complainant completely denied any prior relationship or sexual contact with Sarfraz. *See* Majority, ¶ 11.

77

not. *See* Majority, ¶ 24. Even if general credibility is "a *fact* at issue in the case," Sarfraz's argument is merely conclusory. *See DeSantis*, 155 Wis. 2d at 785 (emphasis added). Basically, Sarfraz argues that sexual contact was consensual before, so it must have been consensual this time, too.

¶ 36. This is precisely the overly general argument for materiality that the Wisconsin Supreme Court rejected in *Jackson*. In *Jackson*, the defendant argued that evidence of prior consensual sex was material because it showed that the complainant was lying when she claimed he forced her to have sex in the charged incident. *Id.*, 216 Wis. 2d at 656. The court described Jackson's argument as "vague arguments and bald assertions" without any link to the complainant's motive for lying about sexual assault on trial. *Id.* at 662. The same is true here. Sarfraz does not explain why the complainant's prior consensual sex with him would give her a motive to make up a story about an armed and masked entry and forcible rape. He, like Jackson, presents no rational link between the past consensual act and a motive for the complainant to lie.

¶ 37. At trial Sarfraz did offer a theory on the complainant's motive for lying about the forcible rape, but that theory was not based on the masturbation evidence. He argued that she lied because he would not marry her. But that defense theory did not require proof that they engaged in consensual masturbation previously. Furthermore, because the trial court admitted all of the other evidence of the prior romantic relationship through the testimony of Sarfraz, his wife and friend, including Sarfraz's testimony that the complainant wanted him to marry her and that he did not want to marry her, the trial court did not err. The jury heard the

evidence that was material to the defense theory about her motive for lying.

¶ 38. The third reason I dissent is that the trial court properly weighed the prejudicial effect of the excluded testimony against its probative value. In determining the admissibility of past sexual conduct, it is important to remember the principles behind the rape shield law. As the court in *DeSantis* noted: "The legislature sought to protect complainants from the humiliation and degradation associated with unfounded allegations regarding sexual history." *Id.*, 155 Wis. 2d at 793. As part of that intent, the legislature permitted past sexual conduct testimony, but only if material, and only if the probative value outweighed the prejudicial effect. Thus stated, the legislature assumed there was prejudicial effect from such testimony and flipped the usual balancing test on its head. As the court stated in *Jackson*: "It is noteworthy that [Wis. Stat.] § 971.31(11) inverts the normal 'weighing of evidence' under Wis. Stat. § 904.03 that evidence should be admitted unless its probative value is substantially outweighed by its potential prejudice." *Jackson*, 216 Wis. 2d at 658 (footnote omitted).

¶ 39. As the trial court here noted, the probative value/prejudicial effect balancing test does not even come into play if the evidence is not material. As noted above, I do not believe it is. But even if it has some marginal materiality, its prejudicial effect outweighs any probative value it may have. First, the excluded evidence does not support the defense theory of the complainant's motive to lie. And secondly, the prior conduct is too dissimilar to the conduct in the charged offense to be probative of anything. The court instructs in *DeSantis* that the alleged prior sexual conduct must be not remote in time or dissimilar in circumstance. *Id.*,

155 Wis. 2d at 790–91. Here, although not remote in time, the alleged prior consensual masturbation is completely dissimilar to the masked, armed, home intrusion and forcible sexual assault at trial. It is too dissimilar to pass the *DeSantis* admissibility test. The prejudice to the complainant from including the alleged masturbation evidence, especially when there was such a limited probative value to the defense theory, is exactly what the rape shield law was designed to eliminate.

¶ 40. For the foregoing reasons, I would affirm the trial court. Thus, I respectfully dissent.