# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP337-CR |
| COMPLETE TITLE: | State of Wisconsin,<br>         Plaintiff-Respondent-Petitioner,<br>    v.<br>Muhammad Sarfraz,<br>         Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 348 Wis. 2d 57, 832 N.W.2d 346
(Ct. App. 2013 – Published)
PDC No.: 2013 WI App 57

| | |
|---|---|
| OPINION FILED: | July 22, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 18, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Dennis R. Cimpl |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ZIEGLER, ROGGENSACK, JJ., concur. (Opinion filed.) |
|   DISSENTED: | |
|   NOT PARTICIPATING: | PROSSER, J., did not participate. |

ATTORNEYS:

For the plaintiff-respondent-petitioner, the cause was argued by *Daniel J. O'Brien*, assistant attorney general, with whom on the briefs was *J.B. Van Hollen*, attorney general.

For the defendant-respondent, there was a brief by *Jason D. Luczak, Raymond M. Dall'Osto*, and *Gimbel, Reilly, Guerin & Brown LLP*, Milwaukee, and oral argument by *Jason D. Luczak*.

2014 WI 78

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.    2012AP337-CR
(L.C. No.  10CF2453)

STATE OF WISCONSIN                    :    IN SUPREME COURT

**State of Wisconsin**

    **Plaintiff-Respondent-Petitioner,**

  **v.**

**Muhammad Sarfraz,**

    **Defendant-Appellant.**

**FILED**

**JUL 22, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded*.

¶1    MICHAEL J. GABLEMAN, J.    The petitioner, State of Wisconsin, seeks review of a published court of appeals decision[1] that reversed the circuit court's judgment of conviction against the defendant, Muhammad Sarfraz, and remanded the case for a new trial. The court of appeals determined that the circuit court had erred by denying Sarfraz's motion to admit evidence of a prior sexual relationship with the complainant, I.N., because

---

[1] State v. Sarfraz, 2013 WI App 57, 348 Wis. 2d 57, 832 N.W.2d 346 (reversing order of the circuit court for Milwaukee County, Dennis R. Cimpl, Judge).

the evidence fit within a statutory exception to Wisconsin's rape shield law, Wis. Stat. § 972.11(2)(b)1 (2009-10).[2]

¶2 We hold that the circuit court's refusal to admit the proffered evidence of the prior sexual relationship was proper under Wisconsin's rape shield law, Wis. Stat. § 972.11. Such evidence is admissible only if the following three criteria are satisfied: 1) the proffered evidence relates to sexual activities between the defendant and the complainant; 2) the evidence is material to a fact at issue in the case; and 3) the evidence is of sufficient probative value to outweigh its inflammatory and prejudicial nature. State v. DeSantis, 155 Wis. 2d 774, 785, 456 N.W.2d 600 (1990). Here, while we agree with the court of appeals that the circuit court improperly found that the proffered evidence of prior sexual conduct was not material, we nevertheless conclude the circuit court correctly excluded the evidence because Sarfraz failed to establish, under the third DeSantis prong, that the probative value of the evidence outweighed its inherent prejudice.

¶3 Accordingly, we reverse and remand to the court of appeals for consideration of the ineffective assistance of counsel and sentencing arguments raised by Sarfraz but not previously addressed.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

---

[2] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

¶4 Most of the facts in this case are disputed. The parties agree on very little. The State and Sarfraz agree that he knew I.N. prior to the charged assault, that I.N. and her father lived with Sarfraz when they first emigrated here from Pakistan, that they later moved to a separate apartment, and that on May 15, 2010, Sarfraz came to I.N.'s apartment. While he was there, both Sarfraz and I.N. sustained knife wounds, and I.N. sustained injuries consistent with strangulation. At some point on that date, Sarfraz and I.N. engaged in sexual intercourse, and after Sarfraz left, I.N. was found in the hallway naked from the waist down, screaming that she had been raped.

¶5 Apart from these general facts, the parties presented vastly different versions of the events that occurred on May 15, 2010. The State alleged a forcible rape, while Sarfraz maintained that any sexual contact was consensual. Sarfraz was arrested the same day of the alleged attack, after police stopped his taxicab. The State filed a complaint against Sarfraz charging him with second degree sexual assault with force or violence by use of a dangerous weapon, in violation of Wis. Stat. §§ 940.225(2)(a), 939.63(1)(b). Sarfraz pled not guilty.

¶6 Prior to the trial, Sarfraz moved to admit evidence of prior sexual conduct between himself and I.N. In his motion, Sarfraz asserted that the sexual conduct between himself and I.N. was consensual. He further alleged, "on numerous occasions in the days and months preceding the date of the alleged sexual

3

assault, that he and the victim, I.N., engaged in various forms of consensual sexual contact." He contended that his wife would support his allegations by testifying that she caught him in bed with I.N. He also stated that two other acquaintances would testify that they observed a flirtatious relationship between I.N. and Sarfraz.

¶7 The circuit court held an evidentiary hearing regarding Sarfraz's motion on November 29, 2010. At the hearing, Sarfraz testified that he had a prior sexual relationship with I.N. He stated that initially when I.N. lived with him, he would hug her and "grab" her. As the relationship progressed, I.N. would lie in bed with him, where they would fondle and masturbate one another, but never engaged in intercourse because of their cultural values. Sarfraz explained that in their culture, individuals did not have intercourse outside of marriage.

¶8 Sarfraz testified that on one occasion, when he was lying in bed with I.N., his wife came home and found them together. I.N. and her father moved out shortly thereafter. Sarfraz visited I.N. at her apartment on multiple occasions to continue the relationship.

¶9 Sarfraz's wife, Riffat Sarfraz, also testified at the evidentiary hearing. She corroborated Sarfraz's testimony about catching him in bed with I.N. She stated that she came home early one day when her daughter was sick, and when she arrived home, she found I.N. in bed with Sarfraz. Neither one was wearing pants. On another occasion when she came home early due

4

to a headache, she found Sarfraz and I.N. in the kitchen lovingly putting food into each others' mouths. These incidents upset her and she pressured Sarfraz to make I.N. and her father move out of the house.

¶10 At the evidentiary hearing Sarfraz also presented the testimony of a co-worker, Azmath Uddin. Uddin testified that on one occasion when he visited Sarfraz's house, he saw Sarfraz lying down with I.N. sitting on his lap with his hands around her waist. On another occasion, he observed I.N. hugging Sarfraz from behind while he was cooking.

¶11 In response, the State presented I.N. to testify at the hearing. She stated that she did not have a sexual relationship with Sarfraz, and that she had viewed him as a brother. She further stated that she had never touched Sarfraz's penis while she was living at his house, that she was never alone with him in his bed, and that his wife did not see them in bed together. I.N. and her father moved out after her father got a job. She stated that the only times Sarfraz visited her apartment was when he helped with the move and on the date of the incident.

¶12 After receiving the testimony, the circuit court determined that a jury could believe there was a sexual relationship, despite I.N.'s denial. It noted that without the rape shield law, the evidence would be relevant. However, to fit within an exception to the rape shield law, the defendant needed to show materiality. The circuit court stated that masturbation was far different from forcible penis-to-vagina

5

intercourse, and it reasoned that the defendant had failed to show that the alleged past relationship was material to each of the elements of rape. The circuit court also determined that the evidence would be inadmissible under the third prong of the DeSantis test. The circuit court concluded that Sarfraz could present evidence about his relationship with I.N., but could not present evidence regarding past sexual contact. Thus, the circuit court denied Sarfraz's motion.

¶13 When the case proceeded to trial, the State again presented I.N., who testified that she and her father lived with Sarfraz and his family for a couple of months after they moved to the United States from Pakistan. She stated that during that time she did not have a romantic relationship with Sarfraz. She and her father moved out after her father started working.

¶14 I.N. testified that at around 10:30 a.m. on May 15, 2010, she heard a knock on her door. When she asked who it was, the individual responded "Jim." I.N. explained that Jim was her landlord. When she opened the door, the person on the other side was wearing a mask. He shoved her into the bathroom, choked her and said "I'll kill you." As the man was pulling a knife out of his pocket, I.N. managed to push the mask from his face and saw that it was Sarfraz. Then, Sarfraz held the knife up to her neck.

¶15 As they continued to struggle, Sarfraz set the knife on the floor. I.N. pulled the knife toward her, lifted it up, and slashed Sarfraz on the cheek. I.N. also cut herself on the finger. She testified that blood filled the bathroom floor.

After Sarfraz took the knife from her, he strangled her harder, tried to hit her, and pulled at her breasts. I.N. continued to struggle to get free.

¶16 I.N. testified that Sarfraz then tied a handkerchief around her mouth and told her he was taking her to the bedroom. I.N. resisted, trying to pull him toward the front door instead. They ended up in the living room.

¶17 Once in the living room, Sarfraz threw I.N. onto the floor, took off her pants and began to fondle her. I.N. kept trying to get away from him but was unable to do so. Sarfraz put a pornographic movie into the DVD player and tried to get I.N. to watch it. She told him she did not want to watch it, and he seemed surprised. I.N. testified that Sarfraz ultimately forced her to have vaginal intercourse.

¶18 I.N. testified that she was afraid Sarfraz was going to kill her, and she tried to leave a note for police by writing his name in blood on a newspaper. After Sarfraz left, I.N. went into the hallway and screamed for help.

¶19 The jury then heard testimony about the events of that day from I.N.'s neighbor, Syed Abdul Bukari. He stated that his wife had heard loud noises in the hallway and when he went to investigate, he discovered I.N. standing half-naked and bloodied, crying and yelling that someone had raped her.

¶20 The State also presented testimony from various individuals involved in the investigation. This included Officer Cosgrove, who inventoried a newspaper that had the letters "S A R" written on it in blood and a pornographic DVD

that was removed from the DVD machine at I.N.'s apartment. There was also a photograph of a file cabinet in I.N.'s apartment, which also had the letters "S-a-r" written on it in blood.

¶21 Detective Stojsavljevic testified about recovering evidence from Sarfraz's taxicab, including a bloody knife that was hidden under the front seat. The knife was processed and analyzed by a forensic scientist from the State Crime Lab who testified that it contained DNA from both Sarfraz and I.N. The forensic scientist also analyzed buccal, vaginal, and cervical swabs from I.N. as well as swabs from Sarfraz. She identified semen on the swabs from I.N.'s cervix and vagina that matched Sarfraz's DNA.

¶22 The jury also heard testimony from the sexual assault nurse who relayed the results of I.N.'s medical exam. I.N. had tenderness at the front of her throat that was "secondary to strangulation," a cut on her finger, and a cut on her ankle. I.N. also had injuries to her vaginal areas consistent with blunt force contact.

¶23 In addition, the jury was shown photographs taken of I.N. on May 15, 2010. They revealed a three-to-four inch scratch on her cheek, injuries to her neck, an injury between her breasts, an injured finger, bruises on her elbow, and an injury to her ankle.

¶24 Sarfraz presented a very different version of events at trial. As background, Sarfraz repeated much of what he stated at the evidentiary hearing. He testified that he and

8

I.N. had a romantic relationship. They had previously engaged in teasing, touching, hugging, and kissing each other. The hugging and kissing was frequent and intense and had occurred when his children were sleeping or away and his wife was out of the house. He testified that he had even brought up marriage with I.N., and that I.N. moved out after his wife caught them together.

¶25 Sarfraz testified that he was not wearing a mask when he went to I.N.'s apartment. He knocked on her door, I.N. asked who it was, and he responded "me." Then I.N. opened the door.

¶26 After entering, Sarfraz hugged I.N. He went to the refrigerator, got a few things, and then sat down and started watching television. I.N. talked to him about her need for money and insisted he leave his wife and children. When he told her that he would not leave his wife and children, things "got heated." I.N. was furious. She grabbed his collar, cried and yelled, and hit him with her fist. He tried to leave, but she kept pulling him inside.

¶27 Sarfraz testified that he suddenly had to use the bathroom. While he was sitting in the bathroom, I.N. entered and stabbed his face with a knife. A struggle ensued and he put his hands on her throat to push her away. He took the knife from I.N. and put it in his pocket. Then they went into the living room. Sarfraz lay down due to pain caused by either kidney stones or gall stones. Throughout this time, Sarfraz's pants remained down.

9

¶28 Sarfraz then asked I.N. if she knew what kind of trouble she could get into if he called the police. I.N. apologized. After Sarfraz recovered from the pain, I.N. started "love talk" and sat on top of him. She fondled him and told him she wanted to have intercourse. She rubbed herself against him and asked him to forgive her. She then started the pornographic DVD and rubbed his penis with her hand.

¶29 Sarfraz stated that I.N. tried to "make love," but he pushed her away and said no. She continued rubbing his penis and asked him to ejaculate on her, which he did. When Sarfraz got up, he began cleaning up the blood and then left.

¶30 To support his defense, Sarfraz also presented the testimony of his wife and Uddin. Uddin repeated his statements from the evidentiary hearing, telling the jury that he had observed I.N. sitting on Sarfraz's lap with his arms around her waist. He also told the jury about the time he saw I.N. hug Sarfraz while Sarfraz was cooking.

¶31 Likewise, Sarfraz's wife repeated much of what she had stated at the evidentiary hearing. She told the jury that on one occasion she saw I.N. and Sarfraz putting food in each others' mouths. She also told the jury that she saw Sarfraz and I.N. in the bedroom together, that this made her upset, and afterwards she threw I.N.'s belongings out of the apartment. Consistent with the court's instruction, his wife did not elaborate on what exactly she saw.

¶32 The jury returned a guilty verdict and Sarfraz was sentenced to ten years' incarceration and five years' extended

supervision. Thereafter, Sarfraz moved for post-conviction relief, alleging ineffective assistance of counsel and entitlement to a new sentence. The circuit court denied the motion. Sarfraz appealed, arguing that the circuit court erred in rejecting his ineffective assistance of counsel claim, and that the circuit court incorrectly interpreted the rape shield law and violated his constitutional rights by excluding the evidence of past sexual conduct between himself and I.N.

¶33 The court of appeals reversed the conviction and remanded the case for a new trial. State v. Sarfraz, 2013 WI App 57, ¶1, 348 Wis. 2d 57, 832 N.W.2d 346. The court of appeals disagreed with the circuit court's conclusion that the evidence of past sexual conduct was not relevant to a material fact in the case, and it stated that the law did not require the prior sexual conduct to be the same as that alleged in the criminal case. Id., ¶26. It determined that the past sexual conduct was material to the issue of consent, and the probative nature of the past sexual contact outweighed any prejudice to I.N. Id., ¶¶24, 30. Accordingly, the court of appeals concluded that the circuit court erred by excluding the evidence. Id., ¶31. The court of appeals did not address Sarfraz's arguments about ineffective assistance of counsel and entitlement to a new sentence.

¶34 The dissent did not agree that the excluded evidence was material. Id., ¶34 (Brennan, J., dissenting). It noted that testimony regarding the prior consensual masturbation was the only excluded evidence and that other evidence of the

11

romantic relationship was admitted at trial. Id. The dissent also asserted that Sarfraz had not explained how the prior consensual masturbation would give I.N. a motive to lie about the incident on May 15. Id., ¶36. Moreover, the omitted evidence had little probative value, as it did not support Sarfraz's theory of defense and was too dissimilar to the conduct charged. Id., ¶39.

## II. STANDARD OF REVIEW

¶35 This issue in this case is whether the circuit court properly excluded evidence of prior consensual sexual conduct between Sarfraz and I.N. The exclusion of evidence is subject to the circuit court's discretion. State v. Jackson, 216 Wis. 2d 646, 655, 575 N.W.2d 475 (1998). We will not find an erroneous exercise of discretion unless the circuit court "applied the wrong legal standard in the exercise of its discretion or . . . the facts of record fail to support the circuit court's decision." State v. Ringer, 2010 WI 69, ¶24, 326 Wis. 2d 351, 785 N.W.2d 448.

## III. DISCUSSION

¶36 Sarfraz argues that the circuit court erroneously exercised its discretion by excluding evidence of his prior sexual relationship with I.N. to support his version of events and I.N.'s motive to fabricate the charges. Sarfraz contends that the circuit court's error deprived him of his constitutional rights to present a defense and to confront adverse witnesses.

¶37 Defendants are granted the constitutional rights to present a defense and confront adverse witnesses under the confrontation and compulsory process clauses of Article I, Section 7 of the Wisconsin Constitution[3] and the Sixth Amendment of the United States Constitution.[4] State v. Pulizzano, 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990). These rights, which have aptly been described as opposite sides of the same coin, are "fundamental and essential to achieving the constitutional objective of a fair trial." Id. (citing Chambers v. Mississippi, 410 U.S. 284, 294 (1973)). Even so, these rights

---

[3] Article I, Section 7 of the Wisconsin Constitution states:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

[4] The Sixth Amendment to the United States Constitution states:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

are not absolute. "Confrontation and compulsory process only grant defendants the constitutional right to present relevant evidence that is 'not substantially outweighed by its prejudicial effects.'" Jackson, 216 Wis. 2d at 657 (quoting Pulizzano, 155 Wis. 2d at 646).

¶38 Here, Sarfraz's proffer of past sexual contact with I.N. implicates Wis. Stat. § 972.11, Wisconsin's rape shield law.[5] Under the rape shield law, introducing any evidence concerning the complainant's prior sexual history or reputation is generally barred "regardless of the purpose." Wis. Stat. § 972.11(2)(c); Pulizzano, 155 Wis. 2d at 644. "The rape shield law expresses the legislature's determination that evidence of a complainant's prior sexual conduct has low probative value and a highly prejudicial effect." DeSantis, 155 Wis. 2d at 784-85. However, § 972.11 sets out three statutory exceptions to its broad evidentiary shield, which "encompass those limited factual scenarios in which the legislature has determined that evidence of a complainant's sexual history may be sufficiently probative of a material issue to overcome the prejudicial nature of such

---

[5] Wisconsin's rape shield law was enacted "'to counteract outdated beliefs that a complainant's sexual past could shed light on the truthfulness of the sexual assault allegations.'" State v. Carter, 2010 WI 40, ¶39, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting State v. Dunlap, 2002 WI 19, ¶19, 250 Wis. 2d 466, 640 N.W.2d 112). The law is rooted in the legislature's determination that evidence of a complainant's prior sexual conduct is largely irrelevant "or, if relevant, substantially outweighed by its prejudicial effect." State v. Pulizzano, 155 Wis. 2d 633, 644, 456 N.W.2d 325 (1990); see also Carter, 324 Wis.2d 640, ¶39; State v. DeSantis, 155 Wis. 2d 774, 784-85, 456 N.W.2d 600 (1990).

evidence." Jackson, 216 Wis. 2d at 657-58; see § 972.11(2)(b)1-3.

¶39 Sarfraz sought to admit evidence under the first exception, Wis. Stat. § 972.11(2)(b)1, which concerns "[e]vidence of the complaining witness's past conduct with the defendant." As this court observed in Jackson, "merely offering proof of the general type described in a particular exception is not enough to defeat the rape shield statute." Jackson, 216 Wis. 2d at 658. The statutory exceptions to the rape shield law are also subject to Wis. Stat. § 971.31(11), which provides that the circuit court must first determine that the proffered evidence is "material to a fact at issue in the case and of sufficient probative value to outweigh its inflammatory and prejudicial nature before it may be introduced at trial."[6] See Wis. Stat. § 972.11(2)(b).

¶40 Thus, under Wis. Stat. §§ 972.11(2)(b)1 and 971.31(11), evidence of the complainant's alleged past sexual conduct with the defendant is admissible only if the defendant makes a three-part showing that: "(i) the proffered evidence

---

[6] Wisconsin Stat. § 971.31(11) operates as an "inverted balancing test," in that it reverses the approach of Wis. Stat. § 904.03 for weighing the admissibility of evidence. 7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 420.4, at 284 (3d ed. 2008). Unlike Wis. Stat. § 904.03, which requires that evidence be admitted unless the probative value is substantially outweighed by the danger of unfair prejudice, the balancing test in § 971.31(11) is "biased against admissibility." Id. In other words, the starting assumption is that the proffered evidence, absent a showing to the contrary, is more prejudicial than probative. Id.; Jackson, 216 Wis. 2d at 658.

15

relates to sexual activities between the complainant and the defendant; (ii) the evidence is material to a fact at issue; and (iii) the evidence of sexual contact with the complainant is of 'sufficient probative value to outweigh its inflammatory and prejudicial nature.'"  Jackson, 216 Wis. 2d at 658-59 (citing DeSantis, 155 Wis. 2d at 785).

¶41 Under the first step of the analysis, the circuit court must be able to conclude from the defendant's proffer that a reasonable person could find it "more likely than not" that the prior sexual conduct occurred.  See Ringer, 326 Wis. 2d 351, ¶32; Jackson, 216 Wis. 2d at 659.  Here, the circuit court determined that a reasonable jury could find it more likely than not that prior sexual conduct had occurred between Sarfraz and I.N.  We agree with the circuit court that a reasonable person could find from the testimony of Sarfraz, Riffat, and Uddin that it is more likely than not that prior sexual conduct had occurred between Sarfraz and I.N.  Because the evidence related to I.N.'s prior sexual conduct with Sarfraz, the first prong of DeSantis is satisfied.

¶42 The second step of the DeSantis test requires the circuit court to consider whether the proffered evidence is material to a fact at issue in the case.  Under this "materiality" prong, the court must determine "whether the evidence is probative of a fact (or proposition) 'of consequence' to the determination of the action."  7 Daniel D. Blinka, Wisconsin Practice Series: Wisconsin Evidence § 401.101,

16

at 98 (3d ed. 2008).[7] Put differently, the test under Wis. Stat. § 904.01——which sets forth the definition of relevancy in Wisconsin evidence law——is "simply whether the evidence has <u>any</u> tendency to make a consequential fact more or less probable."[8] Blinka, § 401.102 at 101 (emphasis added). Evidence should be excluded as "irrelevant" only if it completely lacks probative value. <u>Id.</u> at 102.

¶43 The substantive law governs the particular elements of the crime charged and the facts or propositions that are of consequence to the case. <u>State v. Sullivan</u>, 216 Wis. 2d 768, 785-86, 576 N.W.2d 30 (1998).[9] Therefore, the proponent of the evidence must articulate the fact or proposition the evidence is

---

[7] The common law term "materiality" has been replaced in our jurisprudence with the concept of consequential facts (or propositions). <u>State v. Sullivan</u>, 216 Wis. 2d 768, 786 n.15, 576 N.W.2d 30 (1998) (citing Blinka, <u>supra</u>, § 401.101, at 64 (1991)).

[8] "[E]vidence is relevant if it has the slightest bit of probative worth; only evidence that has no value as proof of a consequential fact is irrelevant." 22 Wright and Graham, <u>Federal Practice and Procedure: Evidence</u> § 5165 (1978 ed.). "Any tiny increase or decrease in the probability of a fact of consequence 'does the trick,' no matter how slightly incremental." Paul Rothstein, <u>Federal Rules of Evidence</u> r. 401 (3d ed. 1985).

[9] Further, "the terms 'fact of consequence' or 'consequential fact' refer not only to the ultimate facts but to all links in the factual chain necessary to establish the ultimate facts." Blinka, <u>supra</u>, § 401.101, at 98. This means that the proffered evidence does not need to bear directly on a particular element of the crime charged. <u>Holmes v. State</u>, 76 Wis. 2d 259, 268, 251 N.W.2d 56 (1977). Instead, the evidence may simply "bear upon any one of countless other factors which are of consequence to the determination of the action." <u>Id.</u>

offered to prove.  Id. at 786.  This offer of proof does not need to "'be stated with complete precision or in unnecessary detail but it should state an evidentiary hypothesis underpinned by a sufficient statement of facts to warrant the conclusion or inference that the trier of fact is urged to adopt.'"  Jackson, 216 Wis. 2d at 662 (quoting Milenkovic v. State, 86 Wis. 2d 272, 284, 272 N.W.2d 320 (Ct. App. 1978)).

¶44 Here, defense counsel argued at the evidentiary hearing that the evidence of prior sexual contact was relevant to Sarfraz's defense to the charge of sexual assault:

> The whole nature of that relationship existed is material to the idea that he would in some way need to come to that apartment with a mask and a knife to try to get sex from her, which——is what the nature of these allegations are.
>
> And it also goes, I think, a——to whether there was consensual sex along the lines that Mr. Sarfraz would testify to, that after she attacked him, she——she enticed him into a——sexual activity along the lines of what he's described in his testimony today, in order to placate him.
>
> That type of consent, I think, is relevant to this type of scenario. It may not be in the traditional type of situation, but I think it is relevant here. It explains the sex.
>
> It also, I think, a——is central to attacking the idea a—that there was forcible entry with a mask and knife.
>
> All of these things are central to the defense. I think we need to be able to put that into evidence in order to present a defense for a——Mr. Sarfraz.

The circuit court was unconvinced by defense counsel's argument and found that, because the prior sexual contact between Sarfraz

and I.N. did not involve violent, non-consensual intercourse, it was not material for purposes of Wis. Stat. § 971.31(11).

¶45 We agree with the court of appeals that the circuit court misapplied the second prong of the DeSantis test to the facts of this case and improperly found the proffered evidence was immaterial. The circuit court's reasoning suggests that, in order for evidence of past sexual conduct between Sarfraz and I.N. to be admissible, it must be of a similar type and nature to that charged against the defendant.

¶46 This narrow interpretation of the second DeSantis prong is unsupported by the language of Wis. Stat. § 972.11(2)(b) and our case law. The exceptions to Wisconsin's rape shield law do not require proffered evidence of past sexual conduct between the accuser and the defendant to be the same as the criminal conduct alleged against the defendant. If they did, the only evidence that could be admitted under one of the exceptions to the rape shield law for "past conduct with the defendant" would be other instances of forcible sex. Wis. Stat. § 972.11(2)(b)1. In fact, to the extent that the rape shield law exceptions are designed, at least in part, to guarantee a meaningful defense to the accused, the circuit court's reading completely defeats such a purpose.

¶47 Nothing in the rape shield law indicates that it should be so narrowly construed. On the contrary, the exception for past sexual conduct in subsection (b)1 has traditionally been applied to all types of sexual contact between the complainant and the defendant. See, e.g., Blinka, supra,

19

§ 420.4, at 284-85 (the first exception in the rape shield law "includes all aspects of the relationship that fall within the broad definition of 'sexual conduct,' . . . . The most common scenario involves the defense's proffer of prior consensual sexual contact in order to prove that the victim also consented to the charged conduct.").

¶48 The proper inquiry under the second prong of the DeSantis test is to consider whether the proffered evidence "relates to a fact or proposition that is of consequence to the determination of the action." Sullivan, 216 Wis. 2d at 772. Here, I.N. alleges that Sarfraz sexually assaulted her. Sarfraz's defense is that the sexual contact was consensual. At the evidentiary hearing, Sarfraz's counsel articulated that the evidence of mutual masturbation was offered to: (1) undercut I.N.'s testimony that Sarfraz gained entry to her apartment by pretending to be her landlord, thereby casting doubt on her credibility; (2) support Sarfraz's version of events that I.N. was angry with him for refusing to leave his wife for her; and (3) bolster Sarfraz's claim that the alleged sexual assault was consensual and merely represented a progression in their sexual relationship. See Blinka, supra, § 420.4, at 285 ("Most often, evidence of prior consensual contact is used to show that the victim consented at the time of the assault . . . .") It is clear Sarfraz's counsel established that the proffered evidence related to facts consequential to the determination of the case. As the court of appeals correctly explained, the fact that "I.N. may have masturbated Sarfraz on numerous occasions, both at

20

Sarfraz's apartment and at her own, is relevant to the issue of whether I.N. consented to sexual contact on May 15, 2010." Sarfraz, 348 Wis. 2d 57, ¶27. Further, "[t]he full scope of their sexual relationship is relevant to whether it is believable that Sarfraz attempted to conceal his identity from someone who knew him so well in a physical sense." Id.

¶49 Moreover, Sarfraz and I.N.'s respective testimony offered wildly divergent accounts of their relationship and what transpired on the day of the alleged sexual assault. The proffered evidence of past sexual conduct weighs directly on their respective credibility, as well as on Riffat's and Uddin's, both of whom testified that they witnessed Sarfraz and I.N. together in intimate situations. Without exception, "[a] witness's credibility is always 'consequential' within the meaning of Wis. Stat. § 904.01." Blinka, supra, § 401.101, at 98 (emphasis added).

¶50 The State argues that concluding the proffered evidence is material would undermine, if not overrule, our holding in State v. Jackson, 216 Wis. 2d 646. We disagree. In Jackson, the defendant initially sought admission of evidence of prior sexual conduct with the complainant to show that the alleged sexual assault was consensual. Jackson, 216 Wis. 2d at 660. On the first day of trial, however, Jackson changed his theory of defense and argued that he never had sexual contact with the complainant. Id. at 652. Despite this last-minute change to his theory of defense, Jackson's counsel argued the evidence of past sexual conduct was still material because it

21

would touch on the complainant's anger and explain "why human beings in this situation might have disagreement concerning what happened because of that prior relationship." Id. at 661-62. The circuit court ruled that the evidence of prior consensual sexual contact between Jackson and the complainant was not material. Id. at 660. On appeal, we held that the vague proffer by Jackson's counsel of "his undeveloped anger or jealousy theory," even if accepted as true, did not "lead to an inference that false accusations were leveled in revenge for the termination of that relationship." Id. at 662. Here, in stark contrast to Jackson, defense counsel's proffer provided a detailed factual basis to the circuit court describing the alleged prior sexual relationship, which included corroboration from other witnesses.

¶51 Thus, we conclude the circuit court erred in finding that the proffered evidence of prior sexual conduct was not "material to a fact at issue in the case." DeSantis, 155 Wis. 2d at 785. Sarfraz proffered sufficient facts to support his defense of consent against the allegation of sexual assault and satisfied the materiality requirement of the second DeSantis prong.

¶52 This brings us to the third step in the analysis, which asks whether the evidence of sexual contact with the complainant has sufficient probative value to outweigh its inflammatory and prejudicial nature. Id. As noted above, this step operates as an inverted balancing test that "initially weight[s] the balance in favor of a determination that the

22

evidence is inherently prejudicial" due to "the legislature's distrust of evidence of a victim's prior sexual history." Jackson at 663. Put differently, the starting assumption is that the evidence is prejudicial. Id. at 658. Satisfying this burden is far more demanding than the showing required under the second step of DeSantis. Unlike the second step, which looks to whether the evidence of prior sexual conduct is material (that is, whether the evidence has any probative value), the third prong asks whether the probative value of that evidence is sufficient to outweigh its inherently inflammatory and prejudicial nature. Id. at 659. "Evidence is unduly prejudicial when it threatens the fundamental goals of accuracy and fairness of the trial by misleading the jury or by influencing the jury to decide the case upon an improper basis." DeSantis, 155 Wis. 2d at 791-92.

¶53 Here, the circuit court determined that Sarfraz failed to meet his burden under the third DeSantis prong, and we agree. We explained in DeSantis that when the proffered evidence of prior sexual conduct and the sexual conduct underlying the criminal charges at issue are "significantly different," the probative value of the proffered evidence "on the issue of consent [is] minimal," and "[t]he fact that the prior incident was remote in time and dissimilar in circumstances further diminishes the value of comparing the two incidents and drawing conclusions regarding the complainant's credibility or her consent." Id. at 791. Indeed, mutual masturbation——which is the evidence Sarfraz argues was improperly excluded from trial——

23

is profoundly dissimilar in circumstance from non-consensual vaginal intercourse following a knife fight.

¶54 Sarfraz's theory of defense was that the intercourse was consensual, and he maintains that the past sexual conduct supports this argument. However, his proffered testimony regarding the past sexual conduct provides little probative value to support this proposition. The past conduct Sarfraz alleged did not go beyond consensual masturbation. Sarfraz explained that he and I.N. had not had intercourse in the past because in their culture one did not have intercourse outside of marriage. That they refrained from intercourse in the past, far from suggesting consent, strongly suggests that I.N. would not have consented to sexual intercourse on May 15, 2010.

¶55 The strong presumption that this type of evidence is prejudicial lends additional support to the circuit court's decision to exclude the evidence. The legislature enacted the rape shield statute in part to protect complainants from the embarrassment and humiliation that discouraged victims from reporting crimes of sexual assault. In determining that evidence of prior sexual conduct has a highly prejudicial effect, the legislature crafted into the rape shield law a "balancing test that [assumes], absent an evidentiary showing to the contrary, [that] the proferred evidence is more prejudicial than probative." Jackson, 216 Wis. 2d at 658. The circuit court concluded that Sarfraz failed to meet his burden of showing that the probative value of the evidence outweighed its prejudicial nature, and we agree. Because of the low probative

24

value of the excluded evidence, and its highly inflammatory and prejudicial nature, we conclude the circuit court's decision to exclude the evidence was not an erroneous exercise of discretion.

## IV.   CONCLUSION

¶56  We hold that the circuit court's refusal to admit the proffered evidence of the prior sexual relationship was proper under Wisconsin's rape shield law, Wis. Stat. § 972.11.  While we conclude the circuit court improperly applied the materiality prong of the DeSantis test, we nevertheless hold the circuit court correctly excluded the evidence because Sarfraz failed to establish, under the third DeSantis prong, that the probative value of the evidence outweighed its inherent prejudice.

¶57 Accordingly, we reverse and remand to the court of appeals for consideration of the ineffective assistance of counsel and sentencing arguments raised by Sarfraz but not previously addressed.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the court of appeals.

¶58  DAVID T. PROSSER, J., did not participate.

¶59 ANNETTE KINGSLAND ZIEGLER, J. *(concurring)*. I concur with the majority opinion that the court of appeals should be reversed. I do not agree, however, with the majority's conclusions regarding the materiality of the evidence in the case at issue. I write separately primarily because I conclude that the evidence at issue was not material, but also because I agree with the well-stated reasoning of the dissent in the court of appeals. See State v. Sarfraz, 2013 WI App 57, ¶¶32-40, 348 Wis. 2d 57, 832 N.W.2d 346 (Brennan, J., dissenting). Sarfraz's materiality argument turns the rape shield law inside out. Sarfraz basically argues that because the victim had previously engaged in consensual masturbation with Sarfraz, she therefore must have consented to the violent, vaginal intercourse at knifepoint with Sarfaz on May 15.[1] Sarfraz further asserts that this evidence is relevant to the victim's truthfulness.

¶60 Sarfraz's argument undermines the fundamental purpose behind the rape shield law: protection of a victim who is improperly attacked regarding prior sexual activity. The rape shield law is intended to exclude evidence of prior consensual, nonviolent sexual activity especially when, as is the case at issue, such evidence is dissimilar from the violent rape

---

[1] The victim steadfastly denies that she ever engaged in any sexual activity with Sarfraz because for cultural reasons, she would not have engaged in such activity. The victim further denies that she ever had any kind of romantic relationship with Sarfraz.

1

charged. Sarfraz's argument goes too far and could be viewed as unraveling the protections that the rape shield law affords a victim of sexual assault. In a sexual assault trial it is not the victim's past that is on trial. Surely the majority cannot be concluding that a defendant need only allege that a previous consensual sexual encounter occurred with the victim in order to render admissible such otherwise prohibited evidence. I write to confirm that the rape shield law remains intact even after the majority's fact-specific determinations in the case at issue.

¶61 In my view, Sarfraz's argument and hence, the majority opinion, is flawed in three fundamental respects: (1) the trial court made a discretionary evidentiary determination that is owed deference; (2) the subject evidence is not material and; (3) the probative value of the evidence does not outweigh its prejudicial effect.

¶62 First, we review the circuit court's discretionary decision regarding the admission of evidence. "'This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion.'" State v. Jackson, 2014 WI 4, ¶43, 352 Wis. 2d 249, 841 N.W.2d 791 (quoting Weborg v. Jenny, 2012 WI 67, ¶41, 341 Wis. 2d 668, 816 N.W.2d 191). A circuit court erroneously exercises its discretion only "'if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record.'" Id. I conclude that the trial court did not err in either its factual determinations or

2

the legal standard applied. I agree with Judge Brennan's dissent in the court of appeals that "the trial court applied facts from the record to the correct legal standard from DeSantis." Sarfraz, 348 Wis. 2d 57, ¶33 (Brennan, J., dissenting) (citing State v. DeSantis, 155 Wis. 2d 774, 456 N.W.2d 600 (1990)).

¶63 Second, the evidence that Sarfraz sought to admit was not material. See id., ¶34. While the trial court excluded Sarfraz's request to introduce testimony that he and the victim previously engaged in consensual masturbation, the jury nonetheless heard testimony that he and the victim had a prior romantic relationship. Whether acts of mutual masturbation occurred or not is of little consequence to the crime charged. If the issue is whether the consensual masturbation evidence was material, Sarfraz's argument that the evidence is material because it goes to truthfulness, misses the mark. Sarfraz's argument that the sexual contact was consensual before, therefore it must be consensual in the case at issue, likewise fails to explain why the complainant would now fabricate a story about an armed and masked entry and forceful vaginal intercourse. I agree with Judge Brennan's dissent that Sarfraz's arguments are "'vague arguments and bald assertions' without any link to the complainant's motive for lying about sexual assault on trial." Id., ¶36 (quoting State v. Jackson, 216 Wis. 2d 646, 662, 575 N.W.2d 475 (1998)).

¶64 To the extent that Sarfraz did offer a theory as to the complainant's motive for lying about the forceful rape at

trial, that theory was not supported by the evidence that he sought to admit. As Judge Brennan's dissent aptly notes, however, "that defense theory did not require proof that they engaged in consensual masturbation previously." Sarfraz, 348 Wis. 2d 57, ¶37 (Brennan, J., dissenting). If the existence of a romantic relationship was what Sarfraz thought to be so significant to his defense, that evidence was already before the jury. As Judge Brennan's dissent pointed out, the trial court did admit other evidence of Sarfraz's prior romantic relationship with the victim through the testimony of Sarfraz, his wife, and a friend. Id. In addition, Sarfraz testified that the complainant wanted him to marry her, but that he did not want to marry her. Id. It is less than clear why evidence of consensual masturbation would explain why she was angry that he would not marry her. If evidence of a relationship was somehow relevant to his defense, the masturbation evidence was not required to so establish the fact that they had such a relationship. Moreover, evidence of a romantic relationship was already before the jury. At most, the excluded evidence was cumulative to the evidence already before the jury.

¶65 Finally, as Judge Brennan's dissent stated, "the trial court properly weighed the prejudicial effect of the excluded testimony against its probative value." Id., ¶38. The purpose of the rape shield law is to "protect complainants from the humiliation and degradation associated with unfounded allegations regarding sexual history." Id. (quoting DeSantis, 155 Wis. 2d at 793). Thus, testimony relating to past sexual

4

conduct is admissible only if it is both material and the probative value outweighs the prejudicial effect, and since the evidence is not material, its probative value does not outweigh the prejudicial effect. I agree with Judge Brennan's dissent that even if one were to conclude that the evidence was of some marginal materiality, the circuit court was correct to conclude that the prejudicial effect outweighed its probative value. Not only does the evidence fail to support the defense theory of the complainant's motive to lie, it is cumulative to evidence introduced at trial and the conduct is "too dissimilar" to the conduct in the charged offense to be probative. As noted in DeSantis, the prior sexual conduct must not be remote in time or dissimilar in circumstance. 155 Wis. 2d at 790-91. Here, as Judge Brennan stated:

> [T]he alleged prior consensual masturbation is completely dissimilar to the masked, armed, home intrusion and forcible sexual assault at trial. It is too dissimilar to pass the DeSantis admissibility test. The prejudice to the complainant from including the alleged masturbation evidence, especially when there was such a limited probative value to the defense theory, is exactly what the rape shield law was designed to eliminate.

Sarfraz, 348 Wis. 2d 57, ¶39 (Brennan, J., dissenting). I agree.

¶66 Both Jackson and DeSantis instruct that the rape shield law presumes both "low probative value and a highly prejudicial effect" when a defendant wishes to introduce evidence of prior consensual sex in the past in order to establish consensual sex with respect to the offense charged. DeSantis, 155 Wis. 2d at 784-85; Jackson, 216 Wis. 2d at 658;

5

see also <u>State v. Pulizzano</u>, 155 Wis. 2d 633, 643-44, 456 N.W.2d 325 (1990).[2] Sarfraz likewise failed to demonstrate that his confrontation right or his right to present a defense were violated. <u>See</u> <u>Nevada v. Jackson</u>, 569 U.S. ___, 133 S. Ct. 1990 (2013); <u>State v. Dunlap</u>, 2002 WI 19, 250 Wis. 2d 466, 640 N.W.2d 112.

¶67 If anything, evidence of a previous loving, consensual, romantic relationship would more likely predict future similar conduct rather than the violent, forceful, bloody events of May 15. Simply stated, Sarfraz did not show how the prior, nonviolent, consensual relationship would predict a future violent episode or impact on the victim's truthfulness. In short, the dissimilarity of the prior acts is at odds with the materiality or probative value and admissibility of the subject evidence. The circuit court properly exercised its discretion in excluding the subject evidence.

¶68 For the foregoing reasons, I concur.

¶69 I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

---

[2] <u>State v. Pulizzano</u> addresses a different exception under the rape shield law. 155 Wis. 2d 633, 643-44, 456 N.W.2d 325 (1990). Notably, Sarfraz's offer of proof was insufficient under that exception as well.