COURT OF APPEALS
DECISION
DATED AND FILED

February 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP226-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF92

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

DAVID JAMES RYCHTIK,

    DEFENDANT-APPELLANT.

       APPEAL from a judgment and an order of the circuit court for Marathon County: LAMONT K. JACOBSON, Judge. *Affirmed*.

       Before Stark, P.J., Hruz and Gill, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. David Rychtik appeals from a judgment convicting him of second-degree sexual assault by use of force[1] and from an order denying his postconviction motion. He challenges the circuit court's exclusion of certain evidence relating to his past sexual history with the victim in this case and the court's admission of other-acts evidence relating to his prior sexual assault of a different victim in another case. We conclude that the court's evidentiary decisions were within its proper exercise of discretion and affirm.

## BACKGROUND

¶2 The sexual assault charge was based upon allegations that, on January 23, 2019, Rychtik pinned Kate[2] down on a couch in an apartment that Rychtik shared with Tyra Cynor, and Rychtik vaginally raped Kate while she cried, scratched him, and yelled at him to stop. In her initial statement to police, in addition to providing details of the assault, Kate asserted that: (1) she had met Rychtik through Cynor about three weeks prior to the assault and never had a "relationship" with him; (2) she saw Rychtik merely as a "potential friend[,]" but that Rychtik appeared to want a relationship with her and became agitated when she denied "his advances"; (3) she had consensual "sexual relations" with Rychtik on one occasion, January 12, 2019; (4) the sexual assault occurred on the fourth occasion that Kate and Rychtik met in person; and (5) during the assault, Kate was at Rychtik and Cynor's apartment at Cynor's invitation.

---

[1] Rychtik also appeals a conviction for misdemeanor bail jumping. We will not separately address the bail jumping conviction, however, because Rychtik raises no issues with respect to that conviction that are not derived from his challenge to the predicate sexual assault charge, which occurred while Rychtik was released on bond in another case.

[2] This matter involves the victims of crimes. Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2021-22), we use pseudonyms instead of the victims' names. All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3 After being charged, Rychtik provided the police with a series of Snapchat and Facebook messages between himself and Kate, which appeared to show that the two had a more significant sexual relationship than Kate had acknowledged and that Kate had made arrangements to meet Rychtik and spend the night at his apartment and possibly have sex with him on the date in question. Rychtik also provided the police with the summary of an interview a State Public Defender investigator had conducted with Cynor, who stated that Rychtik and Kate had sex at Rychtik and Cynor's apartment "a few times" while Cynor was present, including one instance when Cynor walked in on Rychtik and Kate.

¶4 A police investigator then conducted a second interview with Kate, during which Kate said that: (1) she had known Rychtik for several months prior to the incident; (2) she and Rychtik had exchanged many messages and photographs of a sexual nature—including several messages in which Kate indicated an intention to have sex with Rychtik and others in which she referred to past sexual encounters with him; (3) she and Rychtik would have some type of sexual contact "most times" when they would hang out together; (4) she began dating another man in January, after which she no longer wanted to have a sexual relationship with Rychtik; and (5) she "possibly" may have made plans to have sex with Rychtik on the date of the charged assault before telling him that she did not want to have sex with him that night.

¶5 Prior to trial, Rychtik moved to admit twenty-four items of documentary and testimonial evidence relating to his prior relationship and sexual contacts with Kate, including the Snapchat and Facebook messages, Cynor's observation of Rychtik and Kate engaged in sex on one occasion, and Rychtik's

own assertions that he and Kate had engaged in sex on multiple occasions.[3] The circuit court ruled that thirteen of the proposed items were admissible and eleven were inadmissible under the rape shield law, on the grounds that their potential prejudice outweighed their probative value. We will describe the excluded items, which are at issue in this appeal, more fully in our discussion below.

¶6 Also prior to trial, the State moved to admit other acts-evidence related to Rychtik's 2013 juvenile delinquency adjudication on a charge of second-degree sexual assault. The circuit court allowed the victim in that case, Julie, to testify that when she was fifteen years old and in a relationship with Rychtik, Rychtik threw Julie on the ground and vaginally raped her while she cried and told him to stop. The court reasoned that the prior assault was relevant to show intent and motive because—similar to the present assault—it involved forcible intercourse over repeated protests and crying from someone with whom Rychtik was in a relationship. The court also determined that the prior assault's probative value was not outweighed by the danger of unfair prejudice.

¶7 At trial, Kate testified consistent with her initial police interview and contrary to her second interview that she had met Rychtik in January of 2019; that her relationship with Rychtik was only that of friends, even though Rychtik wanted to be more than friends; and that she had only "one instance of consensual sex" with Rychtik prior to the assault. Julie's testimony conformed with the other-acts proffer that had been made prior to trial. The circuit court instructed the jury that it should consider Julie's other-acts evidence only for motive or intent and not to conclude

---

[3] We note that Rychtik did not move to admit any of Kate's statements from her second police interview or Cynor's additional statement that Rychtik and Kate had sex in the apartment a few times. We therefore do not consider whether any of those statements would have been admissible.

that Rychtik acted in conformity with a character trait. The jury found Rychtik guilty.

¶8 Following his conviction at trial, Rychtik filed a postconviction motion renewing his claims that additional evidence of his past sexual contacts with Kate should have been admitted under an exception to the rape shield law and that Julie's testimony about having been previously assaulted by Rychtik should have been excluded as impermissible other-acts evidence. The circuit court denied the motion, and this appeal follows.

## DISCUSSION

¶9 We review a circuit court's decision to admit or exclude evidence under the erroneous exercise of discretion standard. *State v. Dorsey*, 2018 WI 10, ¶24, 379 Wis. 2d 386, 906 N.W.2d 158. We will overturn a court's discretionary evidentiary decision only if the court "applies an improper legal standard or makes a decision not reasonably supported by the facts of record." *Id.* (citation omitted).

**Rape Shield Evidence**

¶10 Wisconsin's rape shield law, WIS. STAT. § 972.11(2), excludes any evidence of a complainant's prior sexual conduct, regardless of the proffered purpose, unless the evidence falls within one of four recognized exceptions. *State v. Ringer*, 2010 WI 69, ¶25, 326 Wis. 2d 351, 785 N.W.2d 448. One of the statutory exceptions involves the complainant's past conduct with the defendant. Sec. 972.11(2)(b)1. Before admitting evidence related to past sexual conduct between the complainant and the defendant in a case involving a sexual assault or a sexually motivated trafficking offense, the circuit court must first determine that the conduct is: (1) more likely than not to have occurred; (2) material to a fact at issue

5

in the case; and (3) of sufficient probative value to outweigh its presumptively inflammatory and prejudicial nature. WIS. STAT. § 971.31(11); *State v. Sarfraz*, 2014 WI 78, ¶¶39-41, 52, 356 Wis. 2d 460, 851 N.W.2d 235.

¶11 Merely "writing about sexual desires or activities is not itself prior sexual conduct," however. *State v. Vonesh*, 135 Wis. 2d 477, 490, 401 N.W.2d 170 (Ct. App. 1986). Such written evidence does not need to satisfy the requirements for the rape shield law exception because it is not shielded by the statute in the first place. *Id.* at 490-91. However, it still must be relevant under WIS. STAT. § 904.01, meaning that it relates to a fact or proposition of consequence to the determination of the action and its probative value must not be substantially outweighed by the danger of unfair prejudice or confusion of issues under WIS. STAT. § 904.03.

¶12 Here, the circuit court excluded eleven items of evidence that Rychtik had sought to admit as exceptions to the rape shield law.

¶13 First, Rychtik sought to introduce evidence that, on January 4, 2019, he sent a picture of his penis to Kate via Snapchat and she responded, "I'll ride that." The circuit court observed that the probative value of this evidence was low because it was not inconsistent with Rychtik and Kate having had sex on one occasion and therefore the evidence "would not necessarily detract from the victim's credibility and would not aid the jury in assessing the relationship between the parties." The court concluded that the low probative value of the evidence was substantially outweighed by its prejudicial effect and the risk of confusing the jury.

¶14 Second, Rychtik sought to introduce evidence that, on January 4, 2019, Rychtik asked via Snapchat "what kind of stuff" Kate liked sexually and she responded that she liked "neck kissing lip biting but not to hard." She also stated she liked receiving and giving oral sex. The circuit court observed that the evidence

did not relate to past sexual conduct and therefore it did not fall within an exception to the rape shield law.[4] The court did not further address the probative or prejudicial value of this evidence.

¶15 Third, Rychtik sought to introduce evidence that, on January 5, 2019, Kate and Rychtik made arrangements to meet and return to Rychtik's apartment for sex. They then had sexual intercourse. The circuit court found this evidence of additional past sexual conduct between Rychtik and Kate beyond that to which Kate had admitted to be "material to the issues of credibility and consent," but the court reasoned that "the danger of misuse of such evidence increases exponentially should multiple acts be admitted." In other words, the danger of prejudice outweighed the probative value of the evidence.

¶16 Fourth, Rychtik sought to introduce evidence that, on or about January 6, 2019, Kate told Rychtik that the sex they had "was pretty great. 10 outta 10." Fifth, Rychtik sought to introduce evidence that, on January 9, 2019, Kate and Rychtik had sexual intercourse. Sixth, Rychtik sought to introduce evidence that sometime between 12:23 p.m. and 1:35 p.m., on January 8, 2019, Rychtik sent a Facebook message to Kate that asked, "You excited to fuck some more tomorrow?" to which Kate responded, "Yesss." Seventh, Rychtik sought to introduce evidence that, sometime between January 4 and 24, 2019, Rychtik sent a Facebook message to Kate that stated, "Yep. And I wanna take you on some more legit dates not just us getting together to have sex." Kate responded, "Really?" Rychtik then stated, "Dont get me wrong. I like that. I just wanna get to know you in a different way."

---

[4] We note that the circuit court's statement on this point misstated the law. Evidence that does not relate to past sexual conduct falls outside the protection of the rape shield law in the first instance, not outside the exceptions to the rape shield law. *State v. Vonesh*, 135 Wis. 2d 477, 490, 401 N.W.2d 170 (Ct. App. 1986).

Kate responded, "Ur the best." Regarding items four through seven, the circuit court applied the same analysis as to the third item, concluding that although the evidence was material to the issues of credibility and consent, the danger of prejudice outweighed its probative value.

¶17     Eighth, Rychtik sought to introduce evidence that, sometime between January 4 and 24, 2019, Rychtik sent a Facebook message to Kate that stated, "Would you feel comfortable if I came inside you." Kate responded, "Little bit." Rychtik then stated, "Ok. I was just wondering. I wont if I shouldn't." Kate responded, "U should do it on my face." As with the first item, the circuit court observed that the probative value of this evidence was low because it was not inconsistent with Rychtik and Kate having had sex on one occasion, and therefore it would not necessarily detract from Kate's credibility. The court concluded that the low probative value of the evidence was substantially outweighed by its prejudicial effect and the risk of confusing the jury.

¶18     Ninth, Rychtik sought to introduce evidence that, sometime between January 4 and 24, 2019, Rychtik sent a Facebook message to Kate that stated, "Bitch you know it. Id Fuck you everyday if I could." Kate responded, "Yasss." The circuit court concluded that this exchange was cumulative to other evidence that the court was admitting regarding Rychtik and Kate's relationship and it was also "of such a nature" that its probative value was substantially outweighed by the danger of prejudice.

¶19     Tenth, Rychtik sought to introduce evidence that, between January 4 and 24, 2019, Kate sent Rychtik several pictures of her vagina and breasts via Facebook. At one point, between January 20 and 21, 2019, she sent a message that stated, "Hey can u send me one of my nudes of my pussy and one of my boobs."

The circuit court determined that this sexting conduct was dissimilar to the act of sexual intercourse at issue in the case and therefore more prejudicial than probative.

¶20    Eleventh, Rychtik sought to introduce evidence that, between January 4 and 24, 2019, Cynor returned to the apartment she shared with Rychtik and observed Kate and Rychtik engaged in sexual intercourse. The circuit court applied the same analysis as to the third item, concluding that although the evidence was material to the issues of credibility and consent, the danger of prejudice outweighed its probative value.

¶21    Rychtik contends that the circuit court's rulings on each of these items "failed to take into account the main issues that were before the jury"—namely, Kate's credibility and whether the act of intercourse, that was the subject of the charge, was consensual or nonconsensual. The record plainly contradicts Rychtik's characterization of the court's decision. The court repeatedly considered whether particular items of proffered evidence were consistent or inconsistent with Kate's assertion that she and Rychtik had intercourse on only one prior occasion, and it deemed such evidence material to the issue of credibility.

¶22    Rychtik fails to acknowledge the primary basis for the circuit court's decision. After deeming evidence that Kate had minimized the extent of her sexual relationship with Rychtik to be relevant, the court then balanced the probative value of that evidence against the prejudicial value of "inherently inflammatory" information regarding Kate's past sexual conduct. In other words, it is not the court's view of the materiality of the proffered evidence that is really at issue but, rather, its view of the evidence's prejudicial effect. Rychtik offers no argument as to why the court could not properly have deemed the excluded items to be more prejudicial than probative—particularly given the presumption in effect. We will

9

not substitute our view of how these factors should have been balanced for the circuit court's exercise of its discretion.

**Other-Acts Evidence**

¶23    As a general matter, evidence of "other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that the person acted in conformity therewith." WIS. STAT. § 904.04(2)(a). Nonetheless, other-acts evidence may be admitted to show some "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" that reduces the possibility that the charged conduct was innocent. *Id.* Such evidence still must be relevant under WIS. STAT. § 904.01, in that it relates to a fact or proposition of consequence to the determination of the action, and its probative value must not be substantially outweighed by the danger of unfair prejudice or confusion of issues under WIS. STAT. § 904.03. *State v. Sullivan*, 216 Wis. 2d 768, 785-89, 576 N.W.2d 30 (1998).

¶24    Wisconsin courts apply a "greater latitude rule" that permits other-acts evidence to be admitted more liberally in sexual assault cases. *State v. Marinez*, 2011 WI 12, ¶20, 331 Wis. 2d 568, 797 N.W.2d 399. The greater latitude rule applies to all three prongs of the *Sullivan* test. *Dorsey*, 379 Wis. 2d 386, ¶33. Pursuant to WIS. STAT. § 904.04(2)(b), which partially codifies the greater latitude rule, evidence of "any similar act[] by the accused is admissible" in criminal proceedings alleging defined sexual assault offenses.

¶25    Here, Rychtik contends that the circuit court erroneously exercised its discretion under *Sullivan* in admitting Julie's testimony about the prior assault because the probative value of that evidence was substantially outweighed by the

danger of unfair prejudice to Rychtik. Rychtik fails to even acknowledge the greater latitude rule, however, much less discuss its application here.

¶26    Similarities between a defendant's prior acts and the charged offense increase the probative value of the evidence regarding motive, intent, plan, and lack of mistake. *See Dorsey*, 379 Wis. 2d 386, ¶¶48-49. Here, the circuit court took into account similarities between Rychtik's assault of Julie and his assault of Kate (i.e., forcible intercourse over the protests of a person with whom Rychtik was in a relationship) when deeming the other-acts evidence to be probative. The court's view that these similarities were more significant than other dissimilarities between the assaults was reasonable under the greater latitude rule.

¶27    The circuit court further determined that the other-acts evidence was not too remote in time such that it was still probative. Again, this determination was reasonable under the greater latitude rule.

¶28    Finally, the circuit court's balancing of the probative value of the other-acts evidence against its potential prejudicial effect represented a proper exercise of discretion, as the court reasonably applied the correct legal test to the facts of record. Once again, Rychtik is merely asking this court to substitute our view of the relative weight of these factors for the circuit court's view.

    *By the Court.*—Judgment and order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.