COURT OF APPEALS
DECISION
DATED AND FILED

February 18, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2016AP2443-CR**

Cir. Ct. No. 2013CF746

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DAVID G. DUDAS,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Outagamie County:  TAMMY JO HOCK, Judge.  *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   David Dudas appeals a judgment, entered upon a jury's verdict, convicting him of fourteen counts of second-degree sexual assault by

use of force, eleven counts of strangulation and suffocation, and one count each of first-degree sexual assault, second-degree reckless injury, substantial battery, misdemeanor intimidation of a witness, and misdemeanor battery. He also appeals an order denying his motion for postconviction relief.

¶2 On appeal, Dudas contends that: (1) the circuit court erred by refusing to read to the jury Dudas' proposed instruction regarding the interplay of a victim's consent relative to the statute criminalizing suffocation and strangulation, WIS. STAT. § 940.235 (2017-18);[1] (2) the court improperly limited Dudas' ability to cross-examine the victim (Dudas' then-spouse, Jane[2]); (3) his right to a unanimous jury was violated; (4) his right to fair notice that his conduct was prohibited by law was violated; (5) the evidence, as to twelve of the counts, was insufficient to support a conviction; and (6) the jury instruction defining the State's burden of proof violated Dudas' due process rights. Further, given these asserted errors, Dudas argues that we should order a new trial in the interest of justice. We conclude that each of Dudas' arguments either lacks merit or is forfeited. Accordingly, we affirm.

## BACKGROUND

¶3 An Information charged Dudas with the thirty counts listed above, as well as one additional count of strangulation and suffocation. The specific event that precipitated these charges occurred on the night of July 21, 2013.

¶4 That evening, one of Jane and Dudas' five children called 911 after Jane ran from her bedroom, covered in blood, and screamed for help. Jane

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we use a pseudonym to refer to the victim.

2

subsequently informed law enforcement that Dudas had physically and sexually assaulted her, and that he had videotaped himself doing so. She also stated that he had committed similar assaults during the past year, and that he had also videotaped some of those incidents.

¶5 Law enforcement searched Dudas' house and located eighteen DVDs. Seventeen of those DVDs contained recordings of Dudas engaging in violent activity with Jane. This activity included Dudas: pushing and holding Jane's head against his penis during fellatio, to the point that Jane choked, gagged and vomited; placing his fingers into Jane's mouth to the point that she choked, gagged and vomited; rubbing Jane's vomit onto her face; pulling and twisting Jane's nipples to the point that a pus-like substance began to discharge from them; anally penetrating Jane while she expressed pain and asked him to stop; pinning Jane's arms behind her back after she indicated that he was hurting her; and placing his hand around Jane's throat and squeezing until she struggled for air.

¶6 Police determined that the DVDs depicted activity that took place between March 2012 and July 2013. They further determined that none of the DVDs depicted the specific events of July 21, 2013. The Information ultimately charged five counts relating to the July 21 event, with the remaining counts corresponding to recordings found on ten of the recovered DVDs.

¶7 At trial, Jane testified that she married Dudas in 1989. She stated that Dudas began becoming "progressively violent" with her around March 2012. From that point until the July 21 event, Jane testified Dudas would frequently ask that she "go up to the bedroom and have intercourse" with him. When she tried to avoid doing so, he would then "either drag me by my arm, my hair, forcefully get me there, and then I would know that in the bedroom I would pay the price for having

tried to say no." Further, if she requested that Dudas stop performing a particular act, he "usually did it harder. He would hold himself up against me. He would suffocate me until I submitted. He would strangle me until I obeyed what he said to do."

¶8 The defense began its cross-examination of Jane by asking whether "activities like" those she described as occurring between March 2012 and July 2013 had occurred throughout her and Dudas' marriage. The State objected, and a lengthy sidebar ensued. During this sidebar, Dudas argued that he wanted to introduce evidence that Jane had been a willing participant in BDSM sex[3] throughout their marriage, as such evidence would support the defense's theory that the activity during the charged time frame was consensual. Further, Dudas argued that evidence of Jane and Dudas' prior sexual history was admissible under an exception to Wisconsin's rape shield law.[4]

¶9 The circuit court stated it believed the evidence Dudas sought to introduce was "irrelevant to the consent issue." It then determined that regardless of whether the evidence was material to whether Jane consented to the charged acts, the court would bar the evidence from being introduced to prove that Jane consented to the sexual activity during the charged time frame because the evidence's prejudicial nature outweighed its probative value. Still, the court determined that

---

[3] BDSM refers to sexual activity that includes elements of bondage, discipline and sadomasochism. *See State v. Van*, 688 N.W.2d 600, 608 (Neb. 2004).

[4] The rape shield law, WIS. STAT. § 972.11, generally bars the introduction of any evidence concerning a complainant's prior sexual history or reputation. *See State v. Sarfraz*, 2014 WI 78, ¶38, 356 Wis. 2d 460, 851 N.W.2d 235. There are, however, three statutory exceptions to this general bar. *Id.* We discuss the specific exception Dudas relied on in support of his argument, § 972.11(2)(b)1., in detail below.

some of the evidence could be admissible for a different purpose—to impeach Jane's credibility if she testified that she never engaged in a certain act and the defense could produce evidence contradicting that testimony.

¶10    Accordingly, the circuit court allowed Jane to be questioned, outside the presence of the jury, about whether she had ever consented to performing certain sexual acts with Dudas. Jane testified that she had never consented with Dudas to: anal sex; nipple-pinching; being gagged during fellatio; being slapped or spanked; or having fingers shoved down her throat. She stated that she had engaged in consensual oral and vaginal sex with Dudas during their marriage. Additionally, she stated that Dudas had performed nonconsensual acts on her at "infrequent times through the marriage."

¶11    After this offer of proof, the circuit court denied Dudas' request to elicit testimony from Jane that nonconsensual sexual activity had occurred throughout the marriage.[5] The court determined that such evidence would confuse the jury and would be unfairly prejudicial to Dudas.

¶12    Jane then resumed testifying in the presence of the jury. She stated that, during the course of her marriage, she had consented to performing oral sex on Dudas, which at times caused gagging. She also stated that she "may have" consented to being filmed by Dudas while engaged in sexual activity with him early

---

[5] As indicated, prior to Jane's testimony outside the presence of the jury, the defense indicated it wished to elicit her testimony that she engaged in consensual BDSM activity throughout the couple's marriage. After Jane denied doing so during the questioning outside the jury's presence, however, the defense sought to introduce her testimony that nonconsensual sexual activity took place throughout the marriage. The defense reasoned that such testimony would implicate Jane's credibility because it would raise questions such as why she "chose to have children if [she was] in a sexually assaultive relationship."

in their marriage. She denied, however, ever consenting to anal sex. She also denied ever telling Dudas that she had rape or anal sex fantasies.

¶13    Following Jane's testimony, the State played three of the above-referenced DVDs to the jury in their entirety. As the State began playing a fourth DVD, however, a juror needed to leave the courtroom to "regain her composure." After the bailiff informed the circuit court that the jury indicated it would like to view the DVDs in "smaller doses," the court asked whether the State could play only the portions of the recordings the State deemed "necessary." Counsel for Dudas objected, arguing that the full recordings should be played to the jury pursuant to WIS. STAT. § 901.07.[6]

¶14    The circuit court overruled Dudas' objection. The court explained:

> I think there are a number of considerations with respect to these videos that need to be addressed. The videos are very, very difficult to watch. They are very graphic, very explicit. I have never seen a juror request a bucket in case they vomit watching material. And that's precisely what's happened in this case. And that's not even the juror who has requested to be excused so far this morning.

Further, citing *State v. Eugenio*, 219 Wis. 2d 391, 412, 579 N.W.2d 642 (1998), the court noted that it retained discretion under WIS. STAT. § 901.07 to admit only the portions of a recording necessary to "provide context and prevent distortion."

---

[6] WISCONSIN STAT. § 901.07 provides:

> When any part of a writing or statement, whether recorded or unrecorded, is introduced by a party, an adverse party may require the party at that time to introduce any other part or any other writing or statement which ought in fairness to be considered contemporaneously with it to provide context or prevent distortion.

6

¶15     In accordance with the circuit court's decision, the State proceeded to play select portions of the DVD that the jury had been earlier viewing (i.e., the fourth DVD).  The State then played portions of two additional DVDs.

¶16     The State did not play any portions of the final four DVDs that corresponded to counts charged in the Information.  Instead, the State introduced testimony regarding the contents of those recordings from Outagamie County sheriff's deputy Michael Fitzpatrick.  It also introduced into evidence Fitzpatrick's written summaries of the contents of all ten DVDs.

¶17     Dudas testified in his own defense.  He denied that he ever engaged in nonconsensual sexual acts with Jane.  He also denied ever intending to impede her ability to breathe.  Regarding the DVDs, he testified that they depicted consensual role play of a type that he and Jane had engaged in since early in their relationship—although he acknowledged that their activity had gotten "rougher" over time.

¶18     Dudas also testified that the DVDs recovered by law enforcement in July 2013 represented only a fraction of the recordings he had made of his and Jane's sexual activity during the course of their marriage.  He stated that he had compiled twenty-two years worth of such recordings—although when he was allowed to return to his residence prior to trial he could locate only one recording made before March 2012.

¶19     Dudas played for the jury select audio portions of that earlier recording, which was from the 1990s.[7]  Before he did so, the circuit court instructed

_____

[7] The parties stipulated that this recording was made between 1991 and 1997.  Although the recording contained a video component, counsel for Dudas played only audio portions at trial to avoid "burden[ing] the jury any further with viewing these things."

the jury that "[y]ou should consider the audio recording only on the issue of credibility of the witness as it is being received solely for that purpose and not for purposes of determining consent." The portions of the audio played for the jury included Jane telling Dudas that she would "do anything [he] want[ed]" and discussing rape and anal sex fantasies.

¶20 Dudas' defense presentation also included testimony from Dr. Dennis Sugrue, a clinical psychologist. Sugrue testified regarding BDSM sex, which he defined as:

> bondage and discipline, domination and submission, sadism and masochism. So, it's basically consensual behavior between two people where the behaviors oftentimes may involve bondage. It may involve servitude. It may involve administration of pain that under normal circumstances would be considered disgusting or very painful or very aberrant. But in an erotic situation where it's consensual, people experience it very differently.

He stated that approximately ten percent of the population engaged in BDSM sex. He also stated that "consent is a critical part" of "healthy BDSM behavior."

¶21 Prior to closing arguments, the circuit court heard argument regarding a pending motion from the State seeking leave to file an amended Information. The proposed amended Information differed from the original Information in several respects. First, it identified, where applicable, the specific DVD to which a particular count corresponded. Second, where multiple counts of the same crime (i.e., strangulation and suffocation) corresponded to the same DVD, it identified "which type of contact or force" supported each count. Third, it removed a description of the specific injury that constituted the great bodily harm that Dudas

8

allegedly caused Jane in support of the second-degree reckless injury count.[8] Fourth, it removed a description of the specific injury that constituted the substantial bodily harm Dudas allegedly caused Jane in support of the substantial battery count.[9]

¶22    Dudas objected to the amended Information on the ground that without a description of which specific injury supported the second-degree reckless injury and substantial battery counts, "the jury could find one act and return two verdicts upon one act."  The circuit court rejected Dudas' argument and accepted the amended Information.

¶23    The circuit court also held a jury instruction conference prior to closing arguments.  During this conference, the court considered Dudas' proposed modification to WIS JI—CRIMINAL 1255, the standard jury instruction for the crime of strangulation and suffocation.[10]  Dudas' modification did not materially alter the text of that instruction; instead, it proposed adding a new section to the pattern instruction that read:

> Lack of Consent.  While [Jane's] lack of consent is not an element, consent informs about whether David Dudas had the requisite intent.  In Counts 7, 11, 14, 16, 18, 19, 21, 27, 29, and 31, the State alleges that David Dudas impeded [Jane's] breathing while she performed oral sex on him.  The evidence must show that [Jane] did not consent to having her mouth blocked by David Dudas's penis.  In deciding whether [Jane] did not consent, you should consider what [Jane] said

---

[8] The original Information charged that Dudas "did recklessly cause great bodily harm to the eyes of [Jane]."

[9] The original Information charged that Dudas "did cause substantial bodily harm to the head of [Jane] requiring stitches."

[10] *See* WIS. STAT. § 940.235(1) ("Whoever intentionally impedes the normal breathing or circulation of blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person is guilty of a Class H felony.").

and did, along with all the other facts and circumstances.
This does not require that [Jane] offered physical resistance.

(Formatting altered.) The court rejected this addition after concluding that "the way that it's worded ultimately requires the State to prove another element that's not required by the statute." Moreover, the court noted that its decision to read the pattern instruction would not "preclude [Dudas] from arguing that … if [the content of the DVDs is] something that they're involved in as a part of their regular sexual activity, you can argue that you don't think that the evidence is that it's a strangulation or suffocation."

¶24     Dudas also requested that the circuit court read the unanimous jury instruction, WIS JI—CRIMINAL 517, "with regard to [the] First Degree Sexual Assault, Second Degree Reckless Injury, [and] Substantial Battery" counts. The court declined to do so, based on its determination that instruction 517 "is an optional instruction. To point out disadvantages of using it, it may require jury unanimity where it is not absolutely required and thus risk prolonging or complicating jury deliberations."

¶25     In addition, Dudas objected to the jury being instructed on alternative modes by which the State could prove the "use of force or threat of force or violence" element of the crime of second-degree sexual assault by use or threat of force or violence. Specifically, Dudas objected to the State's request that the jury be instructed on the "carry over" alternative language found in WIS JI—CRIMINAL 1208.[11] Dudas argued that this language "defines the crime by the purported

---

[11]  That alternative provides that "[u]se or threat of force or violence on one date can carry over to an alleged sexual assault on a later date if the use of threat of force or violence continued to weigh on [the victim] and caused [him/her] to cooperate out of fear for [his/her] safety." *See* WIS JI—CRIMINAL 1208.

victim's subjective state of mind, rather than by an objective standard or criteria. And as such, I felt that it failed to give adequate notice of what's prohibited by law and a violation of due process clauses." The circuit court rejected this argument, and it determined that because the evidence supported the "carry over" instruction, it would be read to the jury.

¶26 The jury ultimately convicted Dudas of the thirty counts listed above. The circuit court imposed sentences consisting of thirty years' initial confinement and ten years' extended supervision.

¶27 Dudas filed a postconviction motion seeking a new trial due to the ineffective assistance of trial counsel or, in the alternative, sentence modification. The circuit court denied the motion, and this appeal follows.[12]

## DISCUSSION

### I. Requested modification to WIS JI—CRIMINAL 1255

¶28 Dudas first argues the circuit court violated his due process rights to privacy, notice and to present a complete defense when it declined to read to the jury his requested modification to WIS JI—CRIMINAL 1255. A circuit court has broad discretion in instructing a jury. *State v. Langlois*, 2018 WI 73, ¶34, 382 Wis. 2d 414, 913 N.W.2d 812. We will uphold that exercise of discretion as long as the instruction as a whole correctly stated the law and comported with the facts of the case. *Id.* Whether an instruction violates a party's due process rights is a question of law that we review independently. *See id.*, ¶51.

---

[12] On appeal, Dudas does not pursue the arguments raised in his postconviction motion. We therefore deem those arguments abandoned. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998).

11

¶29     Dudas advances a number of theories as to how the circuit court's decision not to read his proposed jury instruction violated his due process rights. Specifically, he argues that: (1) the court erred by not instructing the jury that consent was a defense to his prosecution under WIS. STAT. § 940.235(1) because Dudas has a constitutional "right to engage in consensual, brief suffocation during sexual relations with his spouse"; (2) the court erred by not instructing the jury that lack of consent was an element of § 940.235(1); (3) section 940.235(1) is unconstitutionally vague and overbroad; and (4) the court's decision deprived him of the right to present his defense that Jane "had consented to their BDSM practices for years and during the charged offenses never withdrew that consent."

¶30     The State responds that Dudas has forfeited the majority of these arguments by failing to sufficiently raise them in the circuit court.  A litigant is required to make a timely motion, objection or argument that provides the participants with notice of alleged issues, and that provides the circuit court with the opportunity to correct or avoid an error (including an alleged constitutional error) in the first instance. *See State v. Huebner*, 2000 WI 59, ¶¶10-12, 235 Wis. 2d 486, 611 N.W.2d 727.  One of the purposes of this rule is to prevent "sandbagging"— that is, an attorney's decision to not object to an error for strategic reasons and then later claim that the error is grounds for reversal. *Id.*, ¶12.  For the reasons that follow, we agree with the State that Dudas forfeited his arguments, with one exception—his argument that WIS. STAT. § 940.235 impermissibly infringed upon his right to engage in sexual relations with his spouse.

¶31     We begin by discussing the one non-forfeited argument.  In the circuit court, Dudas filed a brief in support of his proposed modification to WIS JI— CRIMINAL 1255.  In that brief, he relied on *Lawrence v. Texas*, 539 U.S. 558 (2003), for the proposition that "[i]nstructing the jury that strangulation occurred during

sexual relations when [Jane] performed oral sex on David Dudas and not requiring the jury to evaluate whether [Jane] consented to sexual intercourse improperly broadens the scope of the statute, and creates criminal liability for acts that are not criminal." Dudas' brief gave the circuit court notice that he believed the pattern jury instructions ran afoul of *Lawrence*. He therefore did not forfeit his argument on appeal that WIS. STAT. § 950.235(1) unconstitutionally deprived him of his rights under *Lawrence*.

¶32 Still, we agree with the State that Dudas' argument fails on its merits. In *Lawrence*, the Supreme Court held the personal liberty guaranteed by the due process clauses of the Fifth and Fourteenth Amendments prevented criminalizing the conduct of consenting adults engaging in "sexual practices common to a homosexual lifestyle." *Id.* at 578. The Court's analysis relied heavily on the fact that engaging in sexual behavior—"the most private human conduct"—in one's home—"the most private of places"—is generally "within the liberty of persons to choose without being punished as criminals." *Id.* at 567. The Court noted, however, that its holding did not constitute an absolute prohibition on the ability of the State or a court to set boundaries on sexual conduct. *See id.* Indeed, the Court explicitly stated that where "injury to a person or abuse of an institution the law protects" is at issue, regulation is permissible. *Id.*

¶33 Unlike in *Lawrence*, the conduct at issue in this case—and that is regulated by WIS. STAT. § 940.235(1)—clearly involves persons who "might be injured." *See Lawrence*, 539 U.S. at 578. As the State notes, and Dudas fails to refute, strangulation is inherently dangerous because when a person is strangled "[u]nconsciousness may occur within seconds and death within minutes." *See* Gael B. Strack & Casey Gwinn, *On the Edge of Homicide: Strangulation as a Prelude*, 26(3) CRIM. JUST. 32, 33 (Fall 2011). Consequently, *Lawrence* does not support an

13

argument that § 940.235(1) infringes upon a constitutional right, regardless of whether ten percent of the population engages in consensual BDSM sex.

¶34    In addition to its misplaced reliance on ***Lawrence***, we note that the underlying premise of Dudas' argument as to why the State's prosecution of him infringed upon his right to engage in consensual BDSM sex is flawed.  Specifically, Dudas frames his prosecution as a case where consensual fellatio has been criminalized.

¶35    But WIS. STAT. § 940.235(1) does not prohibit consensual BDSM sex. Rather, it prohibits a person from "*intentionally* imped[ing] the normal breathing or circulation of blood by applying pressure on the throat or neck or by blocking the nose or mouth of another person."  Section 940.235(1) (emphasis added).  That is, and as WIS JI—CRIMINAL 1255 explained to the jury, it prohibits a person from acting with the purpose to impede another's breathing or being aware that his or her conduct is practically certain to do so.  As such, we agree with the State that it did not prosecute Dudas for engaging in consensual BDSM sex; it prosecuted him for intentionally impeding Jane's breathing by forcing her to keep his penis and fingers in her throat until she gagged and vomited, by putting his hand around her neck, and by forcing a pillow over her head.

¶36    We now turn to the arguments that we determine Dudas has forfeited. First, he argues that the circuit court erred by declining to instruct the jury that lack of consent was an element of the crime of suffocation and strangulation under WIS. STAT. § 940.235(1) and, further, that Dudas must have known Jane did not consent to the acts at issue.  However, as shown by Dudas' requested jury instruction, his position below was not that the court should instruct the jury that lack of consent was an element of § 940.235(1).  To the contrary, his argument was that "lack of

14

consent is *not* an element" of that crime, but that for the State to prove his intent to commit the crime it must necessarily prove he had to have knowledge Jane did not consent to the strangulation and suffocation. (Emphasis added.) We decline to now consider an argument from Dudas that is clearly inconsistent with his position in the circuit court.[13] *See Huebner*, 235 Wis. 2d 486, ¶¶10-12.

¶37 Second, Dudas argues that WIS. STAT. § 940.235(1) is unconstitutionally vague and overbroad. Before the circuit court, however, he merely made a cursory assertion that by failing to instruct the jury on nonconsent, the court would "improperly broaden[] the scope of the statute, and create[] criminal liability for acts that are not criminal." As indicated, he relied on *Lawrence* to support his assertion. That case, however, did not discuss the doctrines of vagueness or overbreadth. *See generally Lawrence*, 539 U.S. 558. By failing to adequately develop his argument with citation to proper legal authority, Dudas deprived the circuit court of notice of a fair opportunity to address his objection. Accordingly, we deem him to have forfeited his argument that § 940.235(1) is constitutionally vague and overbroad. *See State v. Ndina*, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612.

¶38 Third, Dudas argues that the circuit court's rejection of his requested jury instruction regarding consent deprived him of the right to present his defense that Jane "had consented to their BDSM practices for years and during the charged offenses never withdrew that consent." In its response brief, the State argued that

---

[13] We observe that "the normal procedure in criminal cases is to address [a forfeited issue] within the rubric of the ineffective assistance of counsel." *State v. Erickson*, 227 Wis. 2d 758, 766, 596 N.W.2d 749 (1999). As referenced above, however, Dudas does not raise any challenges to the effectiveness of his trial counsel on appeal. Therefore, we do not further address in this opinion any issues that we deem Dudas to have forfeited.

Dudas failed to make this argument before the circuit court and that we should therefore decline to address it. Dudas failed to respond to this argument regarding forfeiture in his reply brief, and he provided no record citation in his brief-in-chief that indicates he raised his "right to present a defense" argument below in regard to his proposed jury instruction modification.[14] Accordingly, we deem Dudas to have conceded that he failed to make this argument below and that he therefore forfeited it. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (unrefuted arguments may be deemed conceded).

## II. Cross-examination of Jane

¶39 Dudas next argues that the circuit court erred by limiting his right to cross-examine Jane and present "other evidence regarding prior BDSM sex during their twenty-four year marriage." Limiting cross-examination is limiting the introduction of evidence. *State v. Rhodes*, 2011 WI 73, ¶22, 336 Wis. 2d 64, 74, 799 N.W.2d 850. The exclusion of evidence is subject to a court's discretion. *State v. Sarfraz*, 2014 WI 78, ¶35, 356 Wis. 2d 460, 851 N.W.2d 235. We will not reverse a court's exercise of such discretion unless the court applied the wrong legal standard or the facts of record fail to support the court's decision. *Id.*

¶40 Defendants have the constitutional rights to present a defense and to confront adverse witnesses under the confrontation and compulsory process clauses of article I, section 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution. *Id.*, ¶37. "Even so, these rights are not absolute. 'Confrontation and compulsory process only grant defendants the constitutional

---

[14] We address a related argument raised by Dudas in regard to his right to present a defense below.

right to present relevant evidence that is not substantially outweighed by its prejudicial effects.'" *Id.* (citation omitted).

¶41     Here, the evidence Dudas faults the circuit court for not admitting concerns Jane's past sexual history with Dudas.  More specifically, he claims the court erroneously exercised its discretion by:  (1) not permitting him to elicit Jane's testimony that Dudas had forced her to perform nonconsensual acts prior to the charged time frame;[15] and (2) allowing him to introduce the 1990s recording only for the limited purpose of impeaching Jane.

¶42     Such evidence, on its face, meets one of the three statutory exceptions to the rape shield law—namely, WIS. STAT. § 972.11(2)(b)1., which concerns "[e]vidence of the complaining witness's past conduct with the defendant."  Still, "merely offering proof of the general type described in a particular exception is not enough to defeat the rape shield statute." *Sarfraz*, 356 Wis. 2d 460, ¶39.  Rather, a defendant must also make a three-part showing that: (1) the proffered evidence relates to sexual activities between the complainant and the defendant; (2) the evidence is material to a fact at issue; and (3) the evidence of sexual contact with the complainant is of sufficient probative value to outweigh its inflammatory and prejudicial nature. *See* **State v. DeSantis**, 155 Wis. 2d 774, 785, 456 N.W.2d 600 (1990).

---

[15] Dudas claims this evidence should have been admitted because he was entitled to "let his jury judge [Jane's] demeanor while she claimed she was sexually assaulted for twenty-four years of marriage, yet regularly expressed her love for him and stayed with him and wanted to have a sixth child."

¶43 We first address the State's contention that Dudas forfeited his argument that the circuit court violated his right to confront Jane by limiting his ability to cross-examine her. We agree with this contention.

¶44 In its response brief, the State asserts that Dudas did not raise any confrontation claim before the circuit court, apart from a brief reference in his postconviction motion.[16] In his reply brief on appeal, Dudas disputed this assertion by pointing to a portion of the transcript where his trial counsel referenced *Chambers v. Mississippi*, 410 U.S. 284 (1973). But counsel explicitly did so to support his argument about Dudas' "right to present [a] defense"; counsel made no reference to Dudas' confrontation rights.

¶45 It is well established that a failure to make a specific argument in the circuit court forfeits the right to make that challenge on appeal. *State v. Rogers*, 196 Wis. 2d 817, 826-29, 539 N.W.2d 897 (Ct. App. 1995). Consequently, we conclude that Dudas has forfeited his right to argue that the court's decisions violated his confrontation rights. *See Huebner*, 235 Wis. 2d 486, ¶¶10-12.

¶46 Nevertheless, our supreme court has recognized that the right to confront a witness and the right to present a defense are "opposite sides of the same coin," insomuch as they grant a defendant a right to present evidence. *Sarfraz*, 356 Wis. 2d 460, ¶37. Thus, even though we conclude that Dudas forfeited his right to raise a confrontation clause argument, we address the merits of his argument that the circuit court erroneously exercised its discretion by restricting his ability to

---

[16] As stated, Dudas has abandoned all of the claims from his postconviction motion, and he does not rely on any reference in his postconviction motion to dispute the State's forfeiture argument in this regard.

introduce evidence of his sexual history with Jane under the applicable exception to the rape shield statute.

¶47    The gist of Dudas' argument is that the circuit court "erred in concluding that prior sexual conduct between the complainant and the charged defendant had no probative value on the issue of consent." In other words, he argues that the court misapplied the second *DeSantis* prong (materiality). *See Sarfraz*, 356 Wis. 2d 460, ¶42. Further, he argues that the court misapplied the third *DeSantis* prong by concluding that the probative value of his proffered evidence did not outweigh its inflammatory and prejudicial nature.

¶48    We assume, without deciding, that the circuit court erred by concluding that evidence of Jane and Dudas' past sexual conduct could have *no* probative value toward the issue of whether she consented to the acts for which Dudas was charged. Nonetheless, even assuming this alleged error, Dudas failed to satisfy the third *DeSantis* prong, and therefore the court did not erroneously exercise its discretion by limiting the evidence of Jane and Dudas' past sexual conduct. *See Sarfraz*, 356 Wis. 2d 460, ¶56 (holding that a circuit court did not erroneously exercise its discretion by refusing to admit a defendant's proffered evidence under the rape shield law, even though the court misapplied the second *DeSantis* prong, because the defendant failed to satisfy the third *DeSantis* prong).

¶49    This conclusion follows because the record shows that any probative value that Jane's past sexual conduct with Dudas had toward whether she consented to the acts with which Dudas was charged was far outweighed by its inflammatory and prejudicial nature. As our supreme court explained in *Sarfraz*, there is a "strong presumption" that evidence of a complainant's past sexual history with a defendant is prejudicial. *Sarfraz*, 356 Wis. 2d 460, ¶55. Moreover, if proffered evidence is

"remote in time and dissimilar in circumstance" from the criminal charges at issue, it "further diminishes the value of comparing the two incidents and drawing conclusions regarding the complainant's credibility or her consent." *Id.*, ¶53.

¶50    These considerations compel our conclusion that Dudas fell far short of showing that the evidence he sought to admit satisfied the third *DeSantis* prong. Any testimony that Jane would have given regarding nonconsensual sex prior to the charged time frame would have been highly prejudicial to Dudas, and the court reasonably concluded that it could confuse the jury. As to the 1990s recording, we perceive nothing unreasonable about the circuit court deciding that it could be admitted to impeach any testimony by Jane that she had never engaged in rape or anal sex fantasies with Dudas, while at the same time deciding that any probative value the recording had on the issue of whether Jane consented to violent activity at least fifteen years later was far outweighed by its presumptively prejudicial nature. Thus, we conclude the court did not erroneously exercise its discretion in refusing to admit Dudas' proffered evidence.

## III.  Jury Unanimity

¶51    Dudas next argues that his due process right to a unanimous jury was violated. "The Wisconsin Constitution's guarantee of the right to trial by jury includes the right to a unanimous verdict with respect to the ultimate issue of guilt or innocence." *State v. Johnson*, 2001 WI 52, ¶11, 243 Wis. 2d 365, 627 N.W.2d 455. "However, '[u]nanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged, [it] is not required with respect to the alternative means or ways in which the crime can be committed.'" *State v. Badzinski*, 2014 WI 6, ¶28, 352 Wis. 2d 329, 843 N.W.2d 29 (citation

omitted). Whether a defendant's right to a unanimous jury has been violated is a question of law that we review independently. *See id.*, ¶26.

¶52 The numerous arguments Dudas advances regarding the alleged violation of his right to a unanimous jury rest upon claimed errors in the amended Information, jury instructions, and verdict forms. He failed, however, to raise objections in the circuit court related to the arguments he now makes on appeal and therefore has forfeited them, with two exceptions.

¶53 Namely, Dudas did object to: (1) the amended Information, on the ground that without a description of which specific injury supported the second-degree reckless injury and substantial battery counts, "the jury could find one act and return two verdicts upon one act"; and (2) the court's submission of the pattern jury instructions for the first-degree sexual assault, second-degree reckless injury, and substantial battery counts without inclusion of the standard jury unanimity instruction, WIS JI—CRIMINAL 517. Consequently, we address only Dudas' arguments related to these two objections and deem the remainder of Dudas' jury unanimity challenges forfeited.[17] *See State v. Marcum*, 166 Wis. 2d 908, 915, 480 N.W.2d 545 (Ct. App. 1992).

*A. Multiplicity*

¶54 Dudas argues that because the amended Information failed to specify the injuries to which the second-degree reckless injury and substantial battery charges (both of which related to the July 21, 2013 event) corresponded, "the jury was left to believe that it could convict Dudas of both [charges] for the exact same

---

[17] These arguments include numerous duplicity challenges and a "lack of specificity" notice challenge.

conduct and injury in violation of his constitutional rights."   In other words, he argues that these two charges were multiplicitous.

¶55     Multiplicity arises where the defendant is charged in more than one count for a single offense.  *State v. Jacobsen*, 2014 WI App 13, ¶25, 352 Wis. 2d 409, 842 N.W.2d 365 (2013).  We examine multiplicity claims using a two-part test. *Id.*, ¶26.  First, we consider whether the charged offenses are identical in law and in fact.  *Id.*  Second, we consider whether the legislature intended to authorize multiple punishments.  *Id.*  If the first part of the test reveals that the charged offenses are not identical either in law or in fact, a presumption arises that the legislature did not intend to preclude cumulative punishments.  *Id.*

¶56     Dudas contends that the reckless injury and substantial battery counts at issue are identical in law because they have "virtually identical elements." Further, relying on *State v. Dibble*, 2002 WI App 219, ¶11, 257 Wis. 2d 274, 650 N.W.2d 908, he asserts that because one of the charged crimes requires recklessness and the other requires intent, "a conviction on both is improper."

¶57     Even assuming that the charged crimes were identical in fact, we reject Dudas' argument that they are identical in law.  As the State notes, the *Dibble* court addressed the situation where the more serious crime required the State to prove intent, whereas the lesser crime only required the State to prove recklessness. *See id.*, ¶11.  Accordingly, we held that a conviction on both crimes would be improper because proving the greater crime would necessarily prove the lesser— because the *mens rea* necessary to recklessly commit an act is always present where the person intended to commit that act.  *See id.*, ¶¶8-11.

¶58     The same concern is not present here.  The more serious crime for which Dudas was convicted, second-degree reckless injury (a Class F felony)

required the State to prove Dudas acted recklessly, whereas the less serious crime, substantial battery (a Class I felony), required the State to prove that he acted intentionally. *See State v. Davis*, 144 Wis. 2d 852, 857, 425 N.W.2d 411 (1988) (holding that when conducting a lesser-included offense analysis, "seriousness of an offense" is determined based upon the maximum penalty that may be imposed). Thus, a defendant could commit the greater offense at issue here—reckless injury— without committing the lesser offense—substantial battery. In addition, to secure convictions on the charges at issue, the State was required to prove legally distinct quantums of injury—great bodily harm[18] for second-degree reckless injury and substantial bodily harm[19] for substantial battery. *Compare* WIS. STAT. § 940.23(2)(a) *with* WIS. STAT. § 940.19(2). Consequently, the offenses are not identical in law.

¶59 As stated, because the counts at issue are not identical in law, a presumption arises that the legislature intended to authorize multiple charges for the same offense. Although Dudas' brief-in-chief recognizes that the second step of a multiplicity analysis requires us to consider whether our legislature intended to permit multiple punishments for the same offense, he failed to present any argument concerning our legislature's intent regarding the charged crimes until his reply brief. We need not consider arguments raised for the first time in a reply brief. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App.

---

[18] Great bodily harm "means bodily injury which creates a substantial risk of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily injury." WIS. STAT. § 939.22(14)

[19] Substantial bodily harm "means bodily injury that causes a laceration that requires stitches, staples, or a tissue adhesive; any fracture of a bone; a broken nose; a burn; a petechia; a temporary loss of consciousness, sight or hearing; a concussion; or a loss or fracture of a tooth." WIS. STAT. § 939.22(38).

1998). Moreover, even if we were to consider the argument advanced in Dudas' reply brief, it is cursory and undeveloped, and we would reject it on that basis. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992). We therefore conclude Dudas has failed to overcome the presumption that our legislature intended to permit him to be convicted of both second-degree reckless injury and substantial battery.

### B. Jury Instruction 517

¶60 Dudas also argues the court erred by declining to read the jury unanimity instruction, WIS JI—CRIMINAL 517.[20] He reasons that because "the evidence presented numerous alternative theories of sexual contact and bodily harm" to support counts one, two, and four (respectively, first-degree sexual assault, second-degree reckless injury, and substantial battery), it is unclear whether the jury unanimously agreed "about what *actus reus* and/or injury resulted in their verdict" on those counts.

¶61 We reject Dudas' argument for two reasons. First, "WIS JI—CRIMINAL 517 is an optional jury instruction." *Marcum*, 166 Wis. 2d at 918 n.3. As such, the "[f]ailure to give that instruction in an appropriate case is not trial court error." *Id.*

---

[20] WISCONSIN JI—CRIMINAL 517 provides:

> The defendant is charged with one count of [insert crime]. However, evidence has been introduced of more than one act, any of which may constitute [insert crime].

> Before you may return a verdict of guilty, all 12 jurors must be satisfied beyond a reasonable doubt that the defendant committed the same act and that the act constituted the crime charged.

¶62    Second, the premise of Dudas' argument is flawed. All three counts for which he requested that the circuit court read to the jury WIS JI—CRIMINAL 517 related to the event that Jane testified took place on the night of July 21, 2013. "Wisconsin has historically held that in 'continuing course of conduct' crimes, the requirement of jury unanimity is satisfied even where the jury is not required to be unanimous about which specific underlying act or acts constitute the crime." **Johnson**, 243 Wis. 2d 365, ¶17 (citation omitted). Stated differently, jury unanimity "is not required with respect to the alternative means or ways in which the crime can be committed." **Badzinski**, 352 Wis. 2d 329, ¶28.

¶63    Jane's testimony was clear that Dudas' attack on July 21 took place over the course of no more than several hours and, as such, the assault constituted a continuing course of conduct. *See **State v. Lomagro***, 113 Wis. 2d 582, 598, 335 N.W.2d 583 (1983). Thus, any uncertainty "about what *actus reus* and/or injury [that occurred during the assault that Jane testified to as having taken place on the night of July 21] resulted in [the jury's] verdict" on counts one, two and four does not, as a matter of law, support Dudas' argument that his right to jury unanimity was violated. Therefore, WIS JI-CRIMINAL 517 was not required to be given to the jury and Dudas' right to a unanimous jury was not violated.

## IV. "Carry Over" Instruction

¶64    Dudas also argues that the circuit court erred by reading the "carry over" instruction found in WIS JI—CRIMINAL 1208 because "[a]bsent [Jane's] actual expression in some manner of her lack of consent during each charged incident, [he] would have no way of knowing she did not consent, and this denied him notice that his conduct was prohibited on the charged dates." A defendant has a due process right to fair notice that his or her conduct is proscribed by law. ***State***

*v. Neumann*, 2013 WI 58, ¶33, 348 Wis. 2d 455, 832 N.W.2d 560. We independently review whether state action violates this right. *Id.*, ¶32.

¶65 We reject Dudas' argument that he lacked notice that his conduct was criminal for a number of reasons. First, it is undeveloped. We could reject his argument on that basis alone. *See Pettit*, 171 Wis. 2d at 646-47.

¶66 Second, Dudas' challenge does not appear to be that the statute at issue, WIS. STAT. § 940.225(2)(a), failed to give him notice that his conduct was criminal. Rather, he argues that the jury instruction somehow misstated the applicable law. A pattern jury instruction, however, is persuasive evidence of a correct statement of law, and Dudas' undeveloped argument presents nothing to contradict this persuasive evidence. *See State v. Ellington*, 2005 WI App 243, ¶8, 288 Wis. 2d 264, 707 N.W.2d 907.

¶67 Third, and relatedly, one of the jury instruction committee's comments to WIS JI—CRIMINAL 1208, directly contradicts the underlying premise of Dudas' argument. That comment states that "[i]f the jury finds that the victim did not in fact consent, it apparently is no defense [to a charge of second-degree sexual assault] that the defendant believed there was consent, even if the defendant's belief was reasonable." *Id.* n.6. Outside of a cursory statement that the "State misstates [his] argument," Dudas provides no response to the State's argument that this comment renders his subjective beliefs about Jane's consent irrelevant because whether Dudas "knew she did not consent is neither an element nor a defense." We therefore deem Dudas to have conceded the State's argument. *See A.O. Smith Corp.*, 222 Wis. 2d at 492.

## V. Sufficiency of the Evidence

¶68    Dudas next contends that the evidence as to twelve of the counts against him was insufficient to support a conviction.  "The standard for reviewing the sufficiency of the evidence is highly deferential to a jury's verdict." *State v. Beamon*, 2013 WI 47, ¶21, 347 Wis. 2d 559, 830 N.W.2d 681.  Evidence is insufficient to support a conviction only if the evidence, when viewed most favorably to the State, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.  *State v. Poellinger*, 153 Wis. 2d 493, 500, 451 N.W.2d 752 (1990).

¶69    Dudas' insufficiency of the evidence argument rests on the fact that the jury did not view all of the DVDs to which the twelve counts at issue corresponded.[21]  He asserts that because the "only evidence on which the jury could have based their guilty verdicts on those twelve counts was Sgt. Fitzpatrick's testimony about what he had seen on the videos and his cursory summaries noting 'some' of what he saw," the State failed to introduce "competent proof" to support his convictions.  In support of his "competent proof" assertion, he argues that Fitzpatrick's testimony:  (1) constituted improper vouching for the credibility of a witness; (2) contained "multi-layered" hearsay; and (3) violated the best evidence rule.

---

[21]  We note that Dudas does not develop an argument that the videos did not portray actions that satisfied the *actus reus* element for any of the twelve charges at issue.

27

¶70 We decline to consider Dudas' challenges to the propriety of Fitzpatrick's testimony, as he raised none of these objections in the circuit court. We therefore deem them forfeited. *See **Huebner***, 235 Wis. 2d 486, ¶¶10-12.

¶71 In addition, we conclude the evidence produced at trial amply supported the jury's verdict on the twelve challenged counts. It is settled law that "testimony that depict[s] the content of … video scenes" can be "sufficient to support [a] jury's verdict." ***State v. Booker***, 2006 WI 79, ¶1, 292 Wis. 2d 43, 717 N.W.2d 676.

¶72 Dudas argues ***Booker*** is distinguishable because it involved an "objective community standard,"—as opposed to the subjective standards at issue here. That is, as framed by Dudas: "did [Jane] consent to the sexual assaults and fellatio/gagging and/or did Dudas intend to block her airway." The problem with Dudas' argument is that it assumes Fitzpatrick's testimony was the *only* evidence upon which the jury could rely to determine (1) whether Jane consented to the acts Fitzpatrick described as having taken place on the video, and (2) whether Dudas intended to block Jane's airway.

¶73 To the contrary, the jury heard extensive testimony from Jane that, during the charged time frame, Dudas performed violent, nonconsensual acts on her. Moreover, the jury saw in the videos it did view that Dudas repeatedly engaged in actions that caused Jane to gag, choke and vomit. The jury could therefore reasonably infer that Dudas knew that his actions in relation to all of the challenged charges were "practically certain to cause" Jane's airway to become blocked—in other words, the jury could infer his intent. *See* WIS. STAT. § 939.23(3) (defining criminal intent). Consequently, we conclude there was sufficient evidence for the jury to infer Dudas' guilt.

## VI. Burden of Proof

¶74    Dudas next argues that the burden of proof jury instruction, WIS JI—CRIMINAL 140, violated his due process rights by impermissibly lowering the State's burden of proof.  His argument relies on two law review articles that he contends constitute empirical evidence showing that our supreme court's holding in *State v. Avila*, 192 Wis. 2d 870, 535 N.W.2d 440 (1995)—that it is "not reasonably likely" that instruction 140 reduces the State's burden of proof—is no longer good law.

¶75    After Dudas filed his briefs in this court, our supreme court decided *State v. Trammell*, 2019 WI 59, 387 Wis. 2d 156, 928 N.W.2d 564.  The *Trammell* court considered the same argument (supported by the same law review articles) as made by Dudas in this appeal, and it held "that WIS JI—CRIMINAL 140 does not unconstitutionally reduce the State's burden of proof below the reasonable doubt standard."  *Trammell*, 387 Wis. 2d 156, ¶67.  We are bound by *Trammell*, and therefore reject Dudas' argument without further discussion.  *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

## VII. New Trial in the Interest of Justice

¶76    Finally, Dudas argues that he is entitled to a new trial in the interest of justice.  This court may grant a new trial in the interest of justice under WIS. STAT. § 752.35 if it "appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried."  Such reversals are rare and are reserved for exceptional cases.  *State v. Kucharski*, 2015 WI 64, ¶41, 363 Wis. 2d 658, 866 N.W.2d 697.

¶77    Dudas argues that, here, the real controversy was not fully tried.  In so arguing, he relies on the myriad arguments discussed above to assert that the

"trial was infected with errors." He further contends that the jury was left to consider an "overcharged case" comprised of a "crazy quilt of acts" that left the jurors unable to "make sense of what was required of them."

¶78 We disagree with Dudas on both scores. With respect to his assertion that the trial was "infected with errors," we have determined that Dudas fails to identify any errors made by the circuit court. "Zero plus zero equals zero." *State v. Lock*, 2012 WI App 99, ¶124, 344 Wis. 2d 166, 823 N.W.2d 378.

¶79 As to his insinuation that the jury must have been confused by the numerous counts presented to it, the record belies his assertion. Indeed, the jury's acquittal of Dudas on one of the strangulation and suffocation counts suggests that it carefully navigated the evidence of the crimes charged and determined that, where that evidence did not show the State carried its burden of proof, it would not return a guilty verdict.

¶80 In all, we perceive no basis upon which to exercise our extraordinary power of reversal in this case. The record before us shows that Dudas received a fair trial, the result of which was that the jury decided the majority of the acts the State alleged Dudas committed occurred and that they constituted crimes, not the consensual BDSM sex acts Dudas claimed them to be. We will not disturb that decision.[22]

---

[22] To the extent we have not addressed an argument purportedly raised on appeal, the argument is deemed rejected. *See State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.